**In the Matter of the Application of CHILDREN'S HOSPITAL OF BUFFALO, Petitioner,**

v.

**BUFFALO & WESTERN N.Y. HOSPITAL & NURSING HOME COUNCIL, AFL–CIO, by its Treasurer, Frank H. Ervolino, and Ronald Ziccardi, Respondents.**

No. CIV–82–360E.

United States District Court, W.D. New York.

March 14, 1984.

Karl W. Kristoff, Buffalo, N.Y., for petitioner.

Stuart M. Pohl, Buffalo, N.Y., for respondents.

## MEMORANDUM

ELFVIN, District Judge.

This Memorandum explains and supports my December 30, 1983 Order.

The Children's Hospital of Buffalo, petitioner herein, seeks to vacate an arbitrator's award rendered in favor of the Buffalo & Western N.Y. Hospital & Nursing Home Council ("the Council"), the union of which employee Ronald Ziccardi is a member. The Council has moved for summary judgment on its cross-claim seeking confirmation of the arbitration award. *See* 9 U.S.C. §§ 9, 10 (1976). The Council has also requested an award of attorney's fees.

The facts of this case are not complicated. During the Fall of 1981 Ziccardi, an

employee of petitioner, was assigned to perform remodeling work at a house owned by petitioner. In late September two vises were discovered missing from the house. Upon being questioned with regard to the vises, Ziccardi, as a union steward, agreed to "look into" the matter in an attempt to retrieve the vises. How aggressively Ziccardi sought to secure the return of the vises is subject to question. Ziccardi said that he knew or had discovered who had absconded with the devices, but refused to reveal to petitioner's management the culprit's identity. The vises were subsequently returned after Ziccardi had been discharged from petitioner's employ, such discharge being the gravamen of these proceedings.

On October 16, 1981 Ziccardi removed a sheet of plywood from petitioner's hospital without first seeking or obtaining permission. Ziccardi alleges that he thought the plywood was scrap and, inconsistently, that he intended only to borrow it. He had been apprehended by petitioner's hospital's Director of Safety and Security before he had left the premises. On October 19, 1981 Ziccardi was discharged as an employee for his refusal to cooperate with petitioner in its attempt to obtain the return of the missing vises and for his attempt to remove the plywood without prior authorization.

Ziccardi subsequently filed a grievance contesting the validity of the discharge under the terms of the collective bargaining agreement ("the cba") between petitioner and the Council.[1] An arbitration hearing was held and the arbitrator rendered his decision March 25, 1982. He found that Ziccardi had attempted to remove the plywood without prior authorization in violation of established policy and that Ziccardi's behavior was disloyally passive with regard to the vises. He found that the infractions were not trivial and warranted severe discipline. The arbitrator further found, however, that discharge from employment constituted excessive discipline. Specifically, the arbitrator found that Ziccardi had not been discharged for "just cause" and therefore ordered petitioner to reinstate Ziccardi with full seniority but without back pay.

Petitioner contends that the arbitrator exceeded the authority given him by the cba in imposing a "just cause" standard for discharge.[2] See 9 U.S.C. § 10(d). It argues that the cba expressly does not limit its authority under its Article III to "suspend, discharge or otherwise discipline employees," and that there are no express contractual limitations of the grounds for which petitioner might discharge an employee. It asserts that it is thus not required to rise to the standard of just cause before instituting disciplinary action against an employee. Petitioner is not so bold as to assert that this power can be wielded in an arbitrary and capricious manner, but rather urges that its conduct is regulated only by the broader or less stringent standard of discharge for "cause."

The Council contends that petitioner's power under Article III of the cba is limited by the cba's Article VI, section 5, which provides in part:

"[A]n employee who is found by an arbitrator to have been unjustly discharged or suspended shall be reinstated with full seniority."

Respondent argues that the term "unjustly" limits petitioner's discretion to discharge or suspend an employee and that the arbitrator was not in error in finding that Ziccardi was not discharged for just cause. Respondent further asserts that, by allowing the grievance to go to arbitra-

---

**1.** Exhibit 1 to the May 17, 1982 affidavit by the Council's Business Representative, Leo M. Hunter, is said to be a copy of the grievance. It is dated October 19, 1981 and sets forth as the nature of the grievance: "Discharged 10–19–81 at 11:00 AM noted by in presents [sic] of G. Seiger, M. Suarato and myself. Discharge unjustly and without cause."

**2.** Section 2 of Article VI of the cba provides: "The arbitrator shall have the authority only to interpret the terms and conditions of this Agreement and shall have no authority to add to, modify or change any of the provisions herein."

tion, petitioner assented to the just cause standard for discharge.

There is unresolved uncertainty whether petitioner assented to the criterion of just cause. The arbitrator's decision states as the issue: "Was Ronald Ziccardi terminated for just cause? If not, what shall the remedy be?" Because Paragraph 10 of the Petition to the State court says that "[p]etitioner never agreed and, in fact, objected at the hearing to the inclusion of the 'just cause' standard in the foregoing statement [that abovequoted as the issue]," various affidavits were forthcoming. Howard G. Foster, the arbitrator, supplied an affidavit (sworn to May 10, 1982) in which he said that he had at both parties' request "re-reviewed" his hearing notes and "my recollections" of the hearing and that petitioner at no time had disagreed with or objected to the standard of just cause although he could not say that such had been the subject of a stipulation. He cited his "standard procedure," on the various occasions when he had served as an arbitrator, to seek at the commencement of the hearing the parties' statement of the issue and to note in his records any objections to "the proposed issue." The issue was, he avers, as set forth at the head of his decision. Hunter says that none of petitioner's representatives ever objected to the issue of just cause. He invites attention to the final paragraph of the March 12, 1982 letter to the arbitrator from petitioner's Associate Director for Personnel wherein the addressee was urged to decide that Ziccardi "was properly terminated for cause." For some unproclaimed reason he says that this is "contrary to Petitioner's contention;" such patently is not true in that Petitioner clearly attacks the utilization of the standard or yardstick of just cause—albeit that Petitioner in Paragraph 11 does draw a comparison between just cause and "legitimate reasons" which latter term is expressly set forth in this cba. The letter is Exhibit 2 to Hunter's affidavit and Exhibit A to the June 14, 1982 affidavit of the Associate Director, Ronald R. Walther. Both Walther in his affidavit and Paul A. Palumbo, petitioner's Director of Safety and Securi-

ty, in his affidavit of the same date set forth that a discussion of "just cause" versus "cause" had ensued after Walther's and Hunter's opening statements to the arbitrator, that Walther consistently and repetitively objected to the former and that there never was any agreement on such point. In the second paragraph of his March 12, 1982 letter Walther wrote that the issue to be decided was whether the termination had been for cause.

Section 1 of Article VI of the cba, while noting the finality of the arbitrator's determination, specifies that "[t]he party wishing to arbitrate must * * * notify the other party in writing, of its desire to arbitrate, *setting forth specifically the nature of the dispute to be argued."* (Emphasis supplied.) Section 7 of Article VI forbade Ziccardi from instituting the arbitration, although he signed the grievance; the necessary inference is that the Council prepared and issued the notice to arbitrate. There is nothing before me to show what were the contents and phraseology of the notice. If it had noted a discharge without just cause as the nature of the dispute to be argued, petitioner very properly would have been hoist by its own petard if it proceeded into arbitration without liminally attacking such recitation of the issue.

Whatever, it is my opinion that the arbitrator properly formulized the issue.

■ The cba, as others of its genus, is a "working document" that expresses and exists in the context of the common law of the workplace. It is a contract, and yet ought not to be subjected to nitpicking or parsing. This cba is not aptly constructed in regard to the issue in hand. Admittedly, controversies often arise which were not, and frequently could not reasonably have been, foreseen when the agreement was reached. A cba must be succinct and understandable; it should not be a tome or treatise. Nevertheless it is not understood why, in this very important facet of the employer-employee relationship, it could not have set forth the applicable standard clearly, rather than by implication. Wages,

vacations, leave and working conditions are obviously important aspects of the relationship but discharge or termination of employment is a core item. Petitioner's prerogatives are set forth in Article III: "Except to the extent abridged by a specific provision of this Agreement, [petitioner] reserves and retains, solely and exclusively, all of its inherent rights to manage the Hospital, as such rights existed prior to the execution of this Agreement with the Union. The sole and exclusive rights of [petitioner] which are not abridged by this Agreement shall include, but are not limited to, its rights * * * to lay off, terminate or otherwise relieve employees from duty for lack of work or other legitimate reasons, and to enforce rules for the maintenance of discipline; to suspend, discharge or otherwise discipline employees * * *, provided, however, that the Management Prerogatives outlined above shall not interfere with any of the rights of employees * * * as set forth in this Agreement." I find no limitation in Article III on petitioner's rights to discharge employees at will, inasmuch as I construe "discharge" to be a matter of discipline and not to be embraced in the foregoing reservation of right to "lay off, terminate or otherwise relieve employees from duty for lack of work or other legitimate reasons," despite petitioner's fastening upon "legitimate reasons" as a justification for Ziccardi's discharge. Nevertheless, even petitioner does not contend that its prerogatives extend to being able to give an employee his or her walking papers without ground or reason. It does, of course, contend that "for cause" is sufficient to such end. As noted, the power to "suspend, discharge or otherwise discipline" employees springs untrammeled from Article III but Article III is not the entire document and the cba must be viewed as a whole. Some support for petitioner's contention is found in section 5 of.

Article V (Leaves of Absence) which states: "Misrepresentation of the reason for a leave shall be *cause* for termination." (Emphasis supplied.) I construe "termination" to mean "discharge" so as to place it among disciplinary actions[3] rather than those other employment-affecting steps ("lay off, terminate or otherwise relieve employees from duty") which can be taken "for lack of work or other legitimate reasons." So, section 5 of Article V sets a cause standard for discharge. Except for section 5 of Article VI (Grievance Procedure)—to which I will soon refer—nothing more is said in the cba as to the criterion for the disciplinary act of discharging an employee. This despite the verbosity in section 4 of Article XI (Promotions) which allows an unpromoted employee to grieve concerning petitioner's determination of his or her qualifications and places upon such employee the burden of showing "that the exercise of [petitioner's] discretion in the matter was improper and without foundation in fact." The prerogative of promoting employees also springs untrammeled from Article III. To my mind, section 5 of Article VI installed a governor on petitioner's otherwise naked power to discipline by discharge. The third and final sentence of that section says: "Further, an employee who is found by an arbitrator to have been *unjustly discharged or suspended* shall be reinstated with full seniority." (Emphasis supplied.) I need not be concerned with the apparent nonapplicability of such provision to "other disciplinary action;" this case involves a discharge and the quoted provision covers such *in haec verba*. In this controversy whether "for cause" or "for just cause," what does "unjustly" mean or connote? It is clear, and I so hold, that what the arbitrator was to decide was whether Ziccardi had been unjustly discharged. "Unjustly" does not,

---

**3.** Disciplinary steps or actions must be considered as a group despite the different phraseology found in the first sentence of section 5 of Article VI (Grievance Procedure)—that is, "a disciplinary action or discharge or suspension." That such construction is correct is shown by the second sentence of that section which rules

that "[g]rievances concerning disciplinary action shall be processed beginning with the third step of the grievance procedure." No one reasonably could contend that grievances concerning discharges or suspensions would not be subject to that direction.

per se, appear in Black's Law Dictionary (Revised Fourth Edition, 1968) ("Black") or in Webster's Third New International Dictionary (1965) ("Webster") but it is shown as and obviously is the adverbial form of the adjective "unjust" and its meaning can be discerned therefrom. Webster defines "unjust" as "characterized by injustice;" Black depicts it as "contrary to right and justice." Or "unjustly" can be interpreted from "justly," its antithesis, which Webster proclaims as "in a just manner," "in conformity with law or justice," "in conformity with fact or reason" or "in a manner appropriate to or required by the case." "Just" and "injustice" and "justice" are apropos. Webster says "just" means "having a basis in fact" or "conforming to fact or reason" or "conforming to some standard of correctness" or "acting or being in conformity with what is morally right or good" or "conforming to or consonant with what is legal or lawful." It declares that "injustice" is an "absence of justice" or "an unjust act or deed." This coin's other side—"justice"—is, according to Webster, "the maintenance or administration of what is just" or "the quality or characteristic of being just, impartial, or fair" or "the principle or ideal of just dealing or right action" or "conformity to such principle or ideal or to truth, fact, or reason."

The distinction between "cause" and "just cause" is not without significance, as was noted by the late Second Circuit Judge Paul R. Hays, while acting as an arbitrator.

He opined:

"[B]y using the term 'cause' without the qualifying 'just', which is almost universal in collective agreements, the parties must have had in mind a standard under which the arbitrator is more limited in his powers than under the more common standard, and the area of employer discretion is correspondingly broader. * * 'Just cause' is a flexible concept and readily lends itself to the practice of adjusting the penalty to fit the needs of the situation as the arbitrator finds them to

be. The comparative inflexibility imposed by the term 'cause', unqualified by 'just', is consonant with the inflexibility of the Agreement in the matter of the penalty." *International Nickel Co., Inc.*, 24 LA 458, 459 (1955).

Black and Webster bear this out, defining "cause" as "a person, thing, fact, or condition that brings about an effect or that produces or calls forth a resultant action or state" or "something that occasions or effects a result" or "a reason or motive for an action or condition" or "that which produces an effect; whatever moves, impels or leads" or "each separate antecedent or the sum of antecedents of an event." Black defines "just cause" as "fair, adequate, reasonable cause" or "legitimate cause; legal or lawful ground for action; such reasons as will suffice in law to justify the action taken." Significantly, Black further states: "As used with reference to the removal of an officer or employee, 'cause' means a just, not arbitrary, cause." *Parsil v. Emery*, 242 App.Div. 653, 272 N.Y.S. 439, 440 (2d Dept., 1934), ruled that a "clause for termination for 'any cause' [was] held to refer to cause justifying termination for employee's breach of contract, not arbitrarily." In *Local 205, United Elec., R. & M. Wkrs. v. General Elec. Co.*, 172 F.Supp. 53, 58 (D.Mass.1959), a clause which reserved to the union "the right to question and investigate any dismissal for cause other than lay off for lack of work" and provided that "where such cause is not justifiable the dismissed Employee shall be reinstated and paid for all time lost"—factually close to the terms of the instant cba—reasonably was to be construed as "dismissal for *justifiable* cause other than lay off." The arbitrator's interpretation of that cba in such fashion was upheld. In *United Food & Comm. Wkrs. Int., Etc. v. Gold Star Sausage*, 487 F.Supp. 596 (D.Colo.1980), the employer's contention that the cba contained no express term providing for the termination for just cause only, leaving the employer free to fire at will for violating a rule against fighting, was not upheld in the face of the arbitrator's agreement with the

union that an employee could not be discharged without just cause. *Smith v. Kerrville Bus Co., Inc.*, 709 F.2d 914 (5th Cir.1983), reversed the lower court's decision that an employee could be fired at will. While the matter of determining whether a certain manual had been incorporated into the cba was remanded for resolution, the court recognized the "harshness of discharge" and that "a just cause limitation" may legally be implied even though the cba be silent in such regard. It was recognized that arbitrators infer such a limitation from other clauses or parts of a cba, such as from grievance and arbitration procedures. The court in *International Bro. of Tel. Wkrs. v. New England Tel. & T. Co.*, 240 F.Supp. 426, 432, 434 (D.Mass.1965), found no legal difference between "cause" as found in the cba and the applicable gauge of "just cause." "Cause" by itself has a certain vagueness and ambiguity and beseeches reasonable and practical interpretation. *Helsby v. St. Paul Hospital and Casualty Company*, 195 F.Supp. 385, 389–392 (D.Minn.1961), *aff'd*, 304 F.2d 758 (8th Cir.1962). "Just cause" in a cba similarly lends itself to non-uniform interpretations. *S.J. Groves & Sons v. Intern. Bro. of Teamsters*, 581 F.2d 1241, 1244–1246 (7th Cir.1978).

▮ Petitioner clearly demonstrated sufficient reason to warrant the discipline of Ziccardi. The arbitrator found that the plywood had been removed from petitioner's premises without proper authorization, "by no means a trivial infraction." The arbitrator also found that Ziccardi had failed to fulfill his obligations of loyalty to petitioner by not arranging for the immediate return of the missing vises.

The terms of the cba left to the arbitrator the interpretation of vague and ambiguous provisions. His construing of "just cause" as the gauge for termination was not an unreasonable construction or interpretation. The cba failed to articulate with sufficient clarity a standard by which such disciplinary conduct was to be measured

and the arbitrator was faced with finding and applying the appropriate standard.

▮ The United States Court of Appeals for the Second Circuit has "consistently accorded the narrowest of readings to the authorization in the Arbitration Act[4] to vacate awards 'where the arbitrators exceeded their powers' * * *." *Andros Compania Maritima v. Marc Rich & Co., A.G.*, 579 F.2d 691, 703 (2d Cir.1978). An "arbitration award will not be vacated for a mistaken interpretation of law." *Sobel v. Hertz, Warner & Co.*, 469 F.2d 1211, 1214 (2d Cir.1972). Nor is it the function of the court to review the arbitration proceeding for errors of law or fact or a failure by the arbitrator to understand or apply the law. A manifest disregard of the law, not merely an error in determination or application of law, is required to vacate the arbitrator's award. *Saxis Steamship Co. v. Multifacs International Traders, Inc.*, 375 F.2d 577, 582 (2d Cir.1967); *Dundas Shipping & Trading Co. v. Stravelakis Bros.*, 508 F.Supp. 1000, 1003–1004 (S.D.N.Y. 1981). *See also I/S Stavborg v. National Metal Converters, Inc.*, 500 F.2d 424, 430–432 (2d Cir.1974) (refusal to vacate an award based on a "clearly erroneous," though not irrational, interpretation of the contract).

In light of these principles, I cannot conclude that the arbitrator exceeded his authority or that the arbitration award should be vacated. The arbitrator's application of a "just cause" standard rather than a "cause" standard is clearly reasonable in view of the vague and ambiguous nature of the contract. The arbitrator did not "manifestly disregard" the applicable law and apply an incorrect standard for discharge. Nor did the arbitrator improperly add to or modify the terms of the cba. The arbitrator interpreted it in the absence of an express governing standard. As such, he did not exceed his authority under the agreement. Accordingly, the arbitrator's award should not be vacated on the basis of the arbitrator's finding that Ziccardi was not terminated for "just cause."

**4.** 9 U.S.C. §§ 1–14.

**1154**

Petitioner also urges that the Council's motion for summary judgment should be denied because the arbitrator's award is irrational and palpably faulty. In *Andros Compania Maritima v. Marc Rich & Co., A.G., supra,* 579 F.2d at 704, the court noted:

"When arbitrators explain their conclusions * * * in terms that offer even a barely colorable justification for the outcome reached, confirmation of the award cannot be prevented by litigants who merely argue, however persuasively, for a different result."

The arbitrator found that Ziccardi committed the acts with which he was charged. Yet, the arbitrator also found several mitigating factors with regard thereto. Although he found that Ziccardi's conduct warranted severe discipline, he also found that discharge was an excessive discipline. Thus, he ordered Ziccardi reinstated with loss of back pay but no loss of seniority.

■ New York law gives arbitrators substantial power to fashion remedies that they believe will do justice between the parties, including the power to fashion relief that a court might not properly grant. *Sperry Intern. Trade v. Government of Israel,* 689 F.2d 301, 306 (2d Cir.1982). The arbitrator's findings were more than a "barely colorable justification for the outcome reached." As such, under the law in this jurisdiction, the arbitrator's award must be confirmed.

■ The Council has also moved for an award of reasonable attorney's fees as the result of petitioner's motion to vacate and opposition to confirmation of the arbitration award. Such motion is without merit. Under the so-called "American rule," a prevailing litigant is not ordinarily entitled to recover attorney's fees absent statutory authorization. *Alyeska Pipeline Co. v. Wilderness Society,* 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975). Section 301 (29 U.S.C. § 185) of the Labor Management Relations Act does not provide for attorney's fees in suits for enforcement of arbitration awards. *See Bell Production Engineers v. Bell Helicopter,* 688 F.2d 997, 999 (5th Cir.1982). It is true that "federal courts, in the exercise of their equitable powers, may award attorney's fees when the interests of justice so require," *Hall v. Cole,* 412 U.S. 1, 4–5, 93 S.Ct. 1943, 1946, 36 L.Ed.2d 702 (1973), but this power is limited to instances in which the opposing counsel acts " 'in bad faith, vexatiously, wantonly, or for oppressive reasons.' " *Id.* at 5, 93 S.Ct. at 1946 (quoting from *Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 391–92, 90 S.Ct. 616, 625, 24 L.Ed.2d 593 (1970)).

■ Petitioner acted within its statutorily granted rights by seeking to vacate the arbitrator's award. 9 U.S.C. § 10(d) explicitly establishes the right to move to vacate an arbitrator's award when an arbitrator exceeds his powers. The pith of petitioner's position has been from the outset that the arbitrator exceeded his authority in interpreting the cba as requiring "just cause" rather than "cause."

It cannot be seriously contended that petitioner's claim was frivolous, in bad faith or vexatious. The flaw in petitioner's position was its failure to perceive the limited scope of a district court's review of an arbitration award and the arbitrator's allowable and legally justified interpretation of this cba. *See Sperry Intern. Trade v. Government of Israel, supra* at 304. Petitioner urged this Court to find that the arbitrator had added to or modified the terms of the cba and thus had exceeded his authority by employing the "just cause" standard. However, I find that the arbitrator properly interpreted and construed the agreement—and need not have carried my review that far.

The expeditious manner in which petitioner commenced this action to vacate the award is further evidence of lack of bad faith on its part. The record shows that petitioner filed for vacature within twelve days of publication of the Arbitrator's Opinion and Award. Moreover, the motion for vacature was not without tenability. Petitioner's claim was not wanton. Accordingly, respondent's request for reasonable attorney's fees was ordered denied.

Respondent's motion for confirmation of the arbitration award was ordered granted.