HOTEL, MOTEL & RESTAURANT EM-
PLOYEES & BARTENDERS UNION,
LOCAL 471, AFL–CIO, Petitioner,

v.

P. & J.G. ENTERPRISES, INC., d/b/a
The Albany Thruway House,
Respondent.

No. 89–CV–593.

United States District Court,
N.D. New York.

Feb. 27, 1990.

Pozefsky Bramley & Murphy, Albany, N.Y., for petitioner; Bruce C. Bramley, of counsel.

DeAngelis Kaplowitz Rice & Murphy, Delmar, N.Y., for respondent; Stephen McQuide, of counsel.

## MEMORANDUM–DECISION AND ORDER

McCURN, Chief Judge.

### Introduction

The Hotel, Motel & Restaurant Employees & Bartenders Union, Local 471, AFL–CIO ("Union") petitions the court to confirm two arbitration awards, pursuant to a section of the United States Arbitration Act, 9 U.S.C. § 9, and Section 301 of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 185.[1] The Union also seeks attorney's fees and costs.

### Background

The Union is the collective bargaining representative for certain employees of the respondent, P. & J.G. Enterprises, Inc. d/b/a The Albany Thruway House. The Albany Thruway House is a motel, bar, and dining and banquet facility located in the City of Albany, New York.

The instant dispute arises out of respondent's discharge of two employees who were members of the collective bargaining unit represented by the Union. The Union claimed that the employees were improperly discharged, and requested that they be reinstated. The parties were unable to resolve the dispute through the grievance procedure prescribed by the collective bargaining agreement between the parties, so the dispute was submitted to binding arbitration pursuant to Article 16 of the agreement.[2]

The first of two arbitration hearings was conducted on May 24, 1988, at which the parties submitted evidence and testimony in support of their positions. The issue framed for arbitrator Dolores N. Whalen by the parties was as follows:

Was the discharge of Ann Russo and Mary O'Brien for just cause?

If not, what shall the remedy be?

See Amended Petition, Exhibit "B".

The arbitrator rendered a written decision dated June 15, 1988, which stated:

Based upon the substantial credible evidence of the case as a whole, the discharge of Ann Russo and Mary O'Brien was not for just cause. The discharge of Mary O'Brien is hereby reduced to a one day suspension without pay. She is to be made whole for all lost wages from March 28, 1988 less any income from any other source.

Ann Russo is to be made whole for all lost wages from March 27, 1988 less any income from any other source.

Both grievants are to be returned to work as soon as practicable with all other

---

**1.** Although the Union brings this action under both 9 U.S.C. § 9 and 29 U.S.C. § 185, the court's subject matter jurisdiction is conferred only by 29 U.S.C. § 185. Title 9 U.S.C. § 9 permits suit to enforce an arbitration award only when the collective bargaining agreement contains a clause providing for confirmation of an award in a court. *See Chauffeurs, Teamsters, Warehousemen and Helpers, Local Union No. 135 v. Jefferson Trucking Co.,* 628 F.2d 1023, 1026 (7th Cir.1980), *cert. denied,* 449 U.S. 1125, 101 S.Ct. 942, 67 L.Ed.2d 111 (1981). The collective bargaining agreement between the Union and employer in the instant case contains no such provision. The jurisdictional basis is provided by 29 U.S.C. § 185, which provides that suits for violation of the collective bargaining agreement between an employer and a union may be instituted in any United States District Court having jurisdiction of the parties (Diversity of citizenship is not required). Section 185 may be used by either party to seek enforcement of an arbitration award in the district court, whether or not the collective bargaining agreement contains a provision contemplating judicial confirmation. *See id.* at 1025–26.

**2.** Article 16 of the agreement provides, in pertinent part:

6. Within five calendar days after completing the [grievance] procedure, (excluding holidays and Sundays), either party may invoke binding arbitration by written request asking [the] New York State Mediation Board to supply a panel for the selection of an arbitrator.

contractual benefits intact, but not later than June 22, 1988.

*See* Amended Petition, Exhibit "C".

Following the issuance of the arbitration award, the employer returned the two discharged employees to work, but did not pay them back wages as directed by the arbitrator. By letter dated August 8, 1988, the Union's attorneys advised the employer that if it did not comply with the arbitration award, they would commence legal proceedings to enforce the award. The employer did not comply, and the Union petitioned this court in May 1988 to confirm the arbitration award. However, the parties agreed soon thereafter to defer the court proceedings and resubmit the dispute to the arbitrator to determine the amount of back wages owed to the two employees.

After a hearing on the issue of back wages, the same arbitrator issued a written arbitration award, dated September 14, 1989, which stated:

> Based upon the substantial credible evidence of the case as a whole, the amount of back wages due Ann Russo and Mary O'Brien are as follows:
>
> | | |
> |---|---|
> | Mary O'Brien | $1,409.59 |
> | Ann Russo | $2,441.51 |
>
> Such payments to be made to each of them within thirty days of the date of this Award.

The arbitrator wrote that, since the parties could not agree on the amount due each employee, she based her calculation of back wages on the "persuasive arguments of the Union" that "the proper way to project what they would have earned was to base those figures on the salary of an individual who did work." *See* Amended Petition, Exhibit "G".

Despite the issuance of the second arbitration award, the employer has still failed to pay the back wages directed by the arbitrator, and hence the Union has filed an amended petition with the court requesting confirmation of both arbitration awards.

## Discussion

It should be noted at the outset that since the employer complied with that part of the first arbitration award directing it to reinstate the two discharged employees, the court need only consider the awards as they relate to payment of back wages.

The employer presents two arguments in opposition to the petition. First, the employer contends that the determination of the arbitrator was not supported by the evidence presented at the arbitration hearings. Secondly, the employer states that, because of financial setbacks, it does not have the money to pay the awards.

■ It is well established that a federal district court's scope of review of an arbitrator's decision is extremely limited. An arbitrator's award which "draws its essence from the collective bargaining agreement" must be enforced by the court. *W.R. Grace & Co. v. Rubberworkers Local 759*, 461 U.S. 757, 764, 103 S.Ct. 2177, 2182, 76 L.Ed.2d 298 (1983) (quoting *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960)). It is also settled law in this circuit that an arbitrator may render a lump sum award, such as the awards in the instant action, without disclosing his or her rationale for it, and courts will not inquire into the basis of the award unless they believe that the arbitrator rendered it in "manifest disregard" of the law or unless the facts of the case fail to support it. *See Kurt Orban Co. v. Angeles Metal Systems*, 573 F.2d 739 (2d Cir.1978); *see also Koch Oil, S.A. v. Transocean Gulf Oil Co.*, 751 F.2d 551 (2d Cir.1985). "If a ground for the arbitrator's decision can be inferred from the facts of the case, the award should be confirmed." *Sobel v. Hertz, Warner & Co.*, 469 F.2d 1211, 1216 (2d Cir.1972).

■ In addition, a party's disagreement with an arbitrator's decision is not a justifiable ground for refusing to comply with an award, for the parties have agreed by contract to accept the judgment of the arbitrator. As stated by the Second Circuit in *Advance Publications, Inc. v. Newspaper Guild of New York*, 616 F.2d 614 (2d Cir. 1980):

> [E]ach party ... accepts the risk that the arbitrator's interpretation of the contract

will disagree with its own and may, in fact, be wrong. [citation omitted] This risk is assumed, however, to obtain such presumed benefits of arbitration as speed, economy and the availability of the judgment of an expert in the field to resolve disputes....

*Id.* at 618.

■ The employer does not urge that the arbitrator's decision was made in "manifest disregard" of the law, but argues that "the award of back wages was in error and was not made in accordance with the facts presented at the arbitration hearing." Affidavit of Jagadish B. Garg, treasurer of respondent P. & J.G. Enterprises, para. 2. Garg avers that the arbitrator refused to admit evidence that one of the discharged employees, Mary O'Brien, removed liquor from the employer's bar without permission and gave it to other employees. Garg also states that both discharged employees were rude to customers and violated unspecified company policy. However, as previously noted, the court need not consider the arbitrator's decision on whether the employees were discharged for just cause, since the employer reinstated them. Thus, these contentions by the employer are not material to the issues before the court— whether back wages should have been awarded and whether the arbitrator's determination of back wages was correct.

■ The employer does not contest the *propriety* of the award of back wages. However, respondent's treasurer Garg states that he argued at the second arbitration hearing that back wages "should not be determined arbitrarily on the basis of income earned by another employees [sic], as the plaintiff had argued." Garg does not state whether he offered an alternative method for calculation of back wages. Garg also claims that evidence was offered that one of the employees, Ann Russo, operated and received income from a day care center after she was discharged. This

would presumably go toward reduction of back pay for other income earned. Russo apparently testified, however, that she received no income from the day care center. While a showing that Russo received other income while she was discharged might require a reduction in her back wages, interpretation of the collective bargaining agreement as it applies to this issue and judgment of the credibility of witnesses are solely within the powers of the arbitrator, not this court.

As a corollary to this argument, Garg asserts that the arbitrator made a determination contrary to the facts presented because she was prejudiced against him because of his race. This assertion can fairly be read as seeking vacation of the arbitration awards on the ground of "evident partiality" of the arbitrator pursuant to 9 U.S.C. § 10(b).[3] *See Wynn v. North American Systems, Inc.,* 608 F.Supp. 30, 34 (D.C. Ohio 1984) (alleged bias because of race proper ground for action to vacate arbitrator's award under 9 U.S.C. § 10(b)).

■ A showing of something more than the mere "appearance of bias" is required to support the vacation of an arbitration award pursuant to Section 10(b). The rule in the Second Circuit is that "evident partiality" will be found "where a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration." *Morelite Const. Corp. v. New York City Dist. Council Carpenters Benefit Funds,* 748 F.2d 79, 84 (2d Cir.1984). The burden is on the party seeking to vacate the award to make some evidentiary showing from which such a conclusion could be made. *Hunt v. Mobil Oil Corp.,* 654 F.Supp. 1487, 1495 (S.D.N.Y.1987). In addition, "the interest or bias ... must be direct, definite and capable of demonstration rather than remote, uncertain, or speculative." *Sidarma Societa Italiana v. Holt Marine Indus.,* 515

---

**3.** Title 9 U.S.C. § 10 provides:
   In either of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—

... (b) Where there was evident partiality or corruption in the arbitrators, or either of them....

F.Supp. 1302, 1307 (S.D.N.Y.), *aff'd* 681 F.2d 802 (2d Cir.1981) (quoting *Tamari v. Bache Halsey Stuart, Inc.*, 619 F.2d 1196, 1200 (7th Cir.), *cert. denied*, 449 U.S. 873, 101 S.Ct. 213, 66 L.Ed.2d 93 (1980)). Mere conclusory allegations by Garg that the arbitrator's decisions were racially motivated, or that the fact the two employees involved were white indicates prejudice in their favor, are insufficient to show "evident partiality" on the part of the arbitrator.

The employer also argues that, due to recent financial losses, it cannot afford to pay the back wages. There is little case law on this issue, but as one district court has stated, "[a] party's financial inability to pay has never been the basis for declining to confirm an arbitration award." *Forum Ins. Co. v. First Horizon Ins. Co.*, Docket No. 87-C-2177 (N.D.Ill. June 8, 1989) (accessible on WESTLAW 1989 WL 65041).

In consideration of the foregoing, the court will not disturb the arbitrator's awards.

Attorney's Fees

The Union also seeks attorney's fees on the basis that the employer's refusal to comply with the arbitration awards was without justification. Under the prevailing American rule, in a federal action, attorney's fees cannot be recovered by the successful party in the absence of statutory authority for the award. *Alyeska Pipeline Service Co. v. Wilderness Soc'y*, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975). Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, under which the Union brings this action, does not provide for attorney's fees in actions to confirm and enforce an arbitrator's award. *See Bell Production Engineers Ass'n v. Bell Helicopter Textron*, 688 F.2d 997, 999 (5th Cir.1982); *Children's Hosp. v. Buffalo & Western New York Hosp. & Nursing Home Council*, 582 F.Supp. 1147, 1154 (W.D.N.Y.1984). Pursuant to its inherent equitable powers, however, a court may award attorney's fees when the opposing counsel acts "in bad faith, vexatiously, wantonly, or for oppressive reasons." *F.D. Rich Co. v. Unit-ed States ex rel. Industrial Lumber Co.*, 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974).

As applied to suits for the confirmation and enforcement of arbitration awards, "the guiding principle has been stated as follows: 'when a challenger refuses to abide by an arbitrator's decision without justification, attorney's fees and costs may properly be awarded.'" *International Chemical Workers v. BASF Wyandotte Corp.*, 774 F.2d 43 (2d Cir.1985) (quoting *Bell Production Engineers Ass'n*, 688 F.2d at 999). Thus, the question presented is whether the employer was justified in refusing to pay the back wages as directed by the arbitrator.

Respondent posits that the employer was justified in not paying back wages because the award was contrary to the facts presented, and because of the employer's inability to pay. Since it is axiomatic that disagreement with the arbitrator's award does not justify refusing to comply with it, the first defense is without merit. *See, e.g., Advance Publications*, 616 F.2d at 618. With respect to the employer's purported inability to pay the awards, the employer has not provided any evidence of an inability to pay, other than Garg's plain statement that the employer has suffered financial losses and thus has no money to pay the awards. Inability to pay is not a defense to a judgment.

*Conclusion*

Accordingly, the court confirms the two arbitration awards pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and directs that costs and reasonable attorney's fees be awarded to the Union, and that judgment be entered in conformity with the awards. The amount of costs and reasonable attorneys fees will be determined by the court upon presentation of proper documentation in support thereof within twenty (20) days of the date hereof. Respondent should be served with a copy of said documentation and may respond by filing with the court its objec-

tions, if any, to the calculation of said costs and attorneys fees.

IT IS SO ORDERED.