**CANTON PRINTING PRESSMEN AND ASSISTANTS UNION NO. 241, Plaintiff,**

v.

**The CANTON REPOSITORY, Defendant.**

**No. C83–2375A.**

United States District Court, N.D. Ohio, E.D.

Dec. 6, 1983.

---

**456**

George B. Vasko, Akron, Ohio, for plaintiff.

James A. Rydzel, Cleveland, Ohio, for defendant.

## MEMORANDUM OPINION

DOWD, District Judge.

Plaintiff, Canton Printing Pressmen and Assistants Union No. 241, (the Union) filed the above-captioned case against defendant, The Canton Repository, seeking compensatory damages, punitive damages, and attorney fees pursuant to § 301 of the Labor Management Relations Act.[1] The Union alleges that the Repository breached its agreement to be bound by the decision of the arbitrator and refused to comply with the arbitrator's award. The Repository

has counterclaimed for attorney fees. The Union filed a motion to dismiss the counterclaim and a motion for summary judgment on the complaint. The Repository also filed a motion for summary judgment.

The issue before this Court is whether the arbitrator exceeded the limits of his authority when he awarded the pressmen pay at the rate of time and one-half for all hours worked in excess of five hours on the Saturday night shift. After due consideration and oral argument and for the reasons which follow, the Union's motion to dismiss is granted; summary judgment is granted in favor of the Union regarding the arbitrator's award and summary judgment is granted in favor of the Repository regarding the Union's claim for attorney fees and punitive damages.

## FACTUAL BACKGROUND

The following facts are not in dispute: the Canton Repository publishes a newspaper. Plaintiff is the local Union of the press operators for the defendant newspaper. A Collective Bargaining Agreement was in effect between the parties from November 15, 1976 through November 14, 1979. At the expiration of that contract the parties were unable to reach a new agreement and submitted to "interest" arbitration.[2]

A three-member arbitration panel issued an interest award which became the labor contract for the parties effective November 2, 1981. Approximately one month after the issuance of the interest award, a dispute arose between the parties regarding the hours the employees were required to work on the Saturday night shift. The employees claim that pursuant to the interest award, they are permitted "beat out" on the Saturday night shift. "Beat out," by way of custom and practice, constitutes

---

1. 29 U.S.C. § 185.

2. Interest arbitration involves arbitrating disputes regarding the fixing of new contract terms in the event bargaining negotiations reach a

deadlock. *See generally* R. Gorman, Labor Law Unionization and Collective Bargaining 573–74 (1976).

seven and one-half hours pay for five hours work. As a practice, the pressmen were permitted to leave after five hours but were paid for a full day of work.[3]

The dispute between the parties arose when the Repository eliminated "beat out" on the Saturday night shift and required the employees to work the entire shift without overtime pay for time worked in excess of five hours. The Union filed a grievance protesting this policy. The parties then waived the contractual provision for a Board of Arbitration and submitted the grievance to Patrick J. Fisher as the sole impartial arbitrator.

The issue presented to Arbitrator Fisher is as follows:

Did the company violate the Collective Bargaining Agreement when it required employees on the Saturday night shift to work a complete shift? If so, what shall the remedy be?

On October 14, 1982, Arbitrator Fisher issued the following award:

The company violated the Collective Bargaining Agreement when it required employees on the Saturday night shift to work a complete shift. Those employees are awarded pay at time and one-half for all hours worked in excess of five. They are also awarded pay at the time and one-half rate for all lunch hours which were not scheduled within the first five hours on Friday nights and Saturday nights.

**3.** "Beat out" was explained at the interest arbitration hearing by Michael W. Johnston who served as publisher of the Canton Repository from February 15, 1972 through June 30, 1980.

Johnston testified that certain sections of the Sunday morning edition of the Repository were "prerun" to cut down on the number of pages printed on Saturday night. The practice of printing sections of the Sunday paper before Saturday night resulted in cutting the Saturday night press run in half.

The "beat out" practice developed from the fact that the pressmen were able to complete their duties on Saturday night in five hours even though they were scheduled to work the customary seven and a half hour shift. Consequently, the practice developed whereby the pressmen

## DISCUSSION AND LAW

### 1. *"Beat Out" and Overtime Pay.*

■ The Supreme Court commented extensively on the use of arbitration to settle labor grievances in the Steelworkers Trilogy.[4] "The federal policy is to promote industrial stabilization through the Collective Bargaining Agreement. A major factor in achieving industrial peace is the inclusion of a provision for arbitration of grievances in the Collective Bargaining Agreement." *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 578, 80 S.Ct. 1347, 1350, 4 L.Ed.2d 1409 (1960) (citations and footnotes omitted). "[A]rbitrators under these collective agreements are indispensable agencies in a continuous collective bargaining process. They sit to settle disputes at the plant level—disputes that require for their solution knowledge of the custom and practices of a particular factory or of a particular industry as reflected in particular agreements." *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960) (footnote omitted).

While deference is to be given to an arbitrator's decision, it must be "confined to interpretation and application of the Collective Bargaining Agreement; he does not sit to dispense his own brand of industrial justice." *Id.* at 597, 80 S.Ct. at 1361. *See also Buckeye Cellulose v. District 65, Division 19, United Auto Workers,* 689 F.2d 629, 631 (6th Cir.1982).

were allowed to depart after completing their work assignment which normally took five hours. They were paid as if they had worked an entire seven and a half hour shift. Hence, the use of the phrase "beat out" to describe the system whereby the pressmen worked five hours on Saturday night and received seven and a half hours pay.

**4.** *United Steelworkers of America v. American Manufacturing Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

The Union and the Repository collectively bargained for settlement of grievances by arbitration. Considering the guidelines for review of an arbitrator's decision, the issue before this Court is whether Arbitrator Fisher's award of pay at the rate of time and one-half for all hours worked in excess of five hours on the Saturday night shift in the press room, is premised on the Collective Bargaining Agreement. The agreement under which the parties were operating was the interest award of November 2, 1981.

The relevant section of the interest award is § 5, which provides:

## HOURS

The Union proposal is denied. The hours of employment shall be the same as those which existed during the term of the Contract in effect from November 15, 1976, through November 14, 1979. However, in the event that the lunch period is not scheduled within the first five hours on Friday night or Saturday night, it shall be paid for at the time and one-half rate.

Therefore, the arbitrator is required to base his award on the agreement in effect from November 15, 1976 through November 14, 1979. The scant record before the Court includes fourteen pages of testimony from the interest arbitration hearing, by Michael W. Johnston, publisher of the Repository at that time. Johnston's testimony is the only indication before the Court of the terms of the 1976 contract regarding beat out. The Repository asserts that there is no evidence that pressmen were permitted to beat out on Saturday night under the 1976 contract. The Court disagrees; Johnston testified as follows:

Q. Let me make sure I understand that. Before 76, under the old contract, the press runs four hours on Saturday night. The employees go home?

A. Yes.

Q. No overtime?

A. They get a straight seven and a half hour pay.

Q. They get a full shift pay?

A. Full shift pay.

Q. *The agreement that you reached with the union in 1976, if the press ran four hours what then?*

A. *They would go home. We allowed, without putting it in the contract, the beat-out.* Which was the fact that they could—*the shift said they would work seven and a half hours but in fact if the press run was over and the work of the press was done they could go home prior to the end of the press run, the end of that shift on Saturday night.*

Q. Under your agreement with the Union in 1976, if the press ran six hours, what then?

A. We would buy their lunch hour at time and a half.

Q. At the end of six hours they would do what?

A. They would beat-out.

. . . .

Q. What was the agreement on beat-out?

A. Saturday night at the end of the work they could go home.

Q. Saturday night only?

A. Saturday night only.

Q. After you reached this agreement with the Union and finalized the contract, did you implement that in the pressroom?

A. Yes, sir, I did.

. . . .

Q. All right. Now, *after you were able to do that what happened on Saturday nights?*

A. *The employees were through before the end of the five hours so they went home.* And the overtime provision didn't apply any more.

Q. The company didn't buy lunch at that point?

A. No. Because *they weren't in the over five hour circumstances.*

Q. Has it happened from time to time after this prerun started that the press

did run more than five hours on Saturday night?

A. Yes, sir, it has.

Q. On those occasions did you buy lunch?

A. Yes, sir. Any time it goes over five hours.

Q. If it doesn't go five hours you don't buy lunch?

A. That's right.

(Emphasis added.)

Based on the foregoing, it is clear that press room employees were permitted to beat-out on the Saturday night shift pursuant to the contract in effect from November 15, 1976 through November 14, 1979. There was no understanding between the parties as to what the rate of pay would be for hours worked in excess of five hours because the employees were permitted to beat-out after five hours.

The arbitrator's award is premised on the interest award, which is based on the 1976 Collective Bargaining Agreement. That agreement permitted "beat out" on the Saturday night shift. Therefore, the arbitrator is correct in his determination that the Repository violated the Collective Bargaining Agreement when it required pressroom employees on the Saturday night shift to work a complete shift. However, the 1976 contract did not provide for pay at the rate of time and one-half for hours worked in excess of five. The arbitrator's award of pay at the rate of time and one-half for hours worked in excess of five is not drawn from the specific language of the 1976 contract; however, the award is legitimate if it is drawn from the essence of that contract.

An arbitrator "may look for guidance from many sources, yet his award is legitimate only so long as it draws *its essence* from the Collective Bargaining Agreement." *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. at 597, 80 S.Ct. at 1361 (emphasis added). The arbitrator may fashion a remedy not provided specifically in the agreement "if a threshold violation of the terms of the Collective Bargaining Agreement is found ..." *Buckeye Cellulose v. District 65,*

*Div. 19 United Auto Workers,* 689 F.2d at 631. The Repository committed a threshold violation of the agreement by requiring the employees to work a full shift on Saturday night. Therefore, the arbitrator could fashion a remedy drawn from the essence of the agreement.

Pressmen on the Saturday night shift were paid for seven and one-half hours of work, but only were required to work five hours. This wage provision for the Saturday night shift was a provision of their bargaining agreement. Consequently, the pressmen are now entitled to payment if they worked in excess of five hours or, otherwise all work in excess of five hours would be uncompensated. The arbitrator's decision that hours worked in excess of five were to be paid at the rate of time and one-half was reasonable considering that if the employees did not get a lunch hour it was paid at the rate of time and one-half.

Considering the deference shown to the impartial arbitrator chosen by the parties, who has knowledge of the custom and practices of this industry, his award of October 14, 1982 is reasonable and is based ·on the essence of the Collective Bargaining Agreement. The Repository is to comply with the arbitrator's award.

Accordingly, summary judgment is granted in favor of the Union and against the Repository with regard to the arbitrator's award.

2. *Punitive Damages.*

■ Punitive damages are disfavored in actions pursuant to § 301 of the Labor Management Relations Act. *Baltimore Regional Joint Board v. Webster Clothes, Inc.,* 596 F.2d 95, 98 (4th Cir.1979); *Local 127, United Shoe Workers of America v. Brooks Shoe Manufacturing Co.,* 298 F.2d 277, 278 (3rd Cir.1962); *Ironton Coke Corp. v. Oil Chemical & Atomic Workers,* 491 F.Supp. 70, 71–74 (S.D.Ohio 1980).

■ The Union has failed to make any showing, by affidavit or otherwise, that the Repository acted in bad faith. Accordingly, summary judgment is granted in favor

of the Repository and against the Union with regard to punitive damages.

### 3. *Attorney Fees.*

 The Sixth Circuit has held attorney fees may not be awarded in a § 301 action. *Buckeye Cellulose v. District 65, Division 19, United Auto Workers,* 689 F.2d at 631; *See also Summit Valley Industries, Inc. v. Local 112, United Brotherhood of Carpenters,* 456 U.S. 717, 102 S.Ct. 2112, 72 L.Ed.2d 511 (1982).

Accordingly, the Repository's counterclaim for attorney fees is dismissed. Summary judgment is granted in favor of the Repository and against the Union on the Union's request for attorney fees.

IT IS SO ORDERED.