**Annie Laura WYNN, Plaintiff,**

v.

**NORTH AMERICAN SYSTEMS, INC., Defendant.**

**No. C83–4734.**

United States District Court, N.D. Ohio, E.D.

June 7, 1984.

Terry Gilbert, Cleveland, Ohio, for plaintiff.

Kenneth Kraus, Cleveland, Ohio, for defendant.

## MEMORANDUM OPINION

DOWD, District Judge.

Plaintiff, Annie Laura Wynn, filed the above-captioned case against defendant, North American Systems, Inc. (N.A.S.), alleging employment discrimination in violation of 42 U.S.C. §§ 1981, 2000e–5(f). N.A.S. filed a motion for summary judgment. The issue before the Court is whether an employer may be held liable under Title VII and § 1981 for implementing the decision of an arbitrator pursuant to a collective bargaining agreement. For the reasons which follow, N.A.S.' motion for summary judgment is granted.

## FACTUAL BACKGROUND

The parties stipulate to the following facts: Wynn is a black female and she formerly worked on the assembly line at N.A.S.' plant in Bedford Heights, Ohio. Bertha Martin is a white female and works on the assembly line at N.A.S.' plant in Bedford Heights, Ohio. On August 20, 1981, Wynn and Martin were discharged for fighting during working hours.

The parties stipulate further that Wynn and Martin filed grievances challenging their terminations pursuant to the collective bargaining agreement entered into between their union, the Industrial & Allied Employees Local Union No. 73 affiliated with the International Brotherhood of Teamsters Chauffeurs Warehousemen and Helpers of America, and N.A.S. Because neither grievance was resolved through the grievance procedure, the grievances were referred to binding arbitration pursuant to Article XIII, § 2 of the collective bargaining agreement.[1]

After a hearing on the matter, Arbitrator Morton D. Barrisch, issued an opinion on April 21, 1982, reinstating Martin as an employee of N.A.S. without loss of seniority and without back pay or contractual benefits, and denying Wynn reinstatement. Arbitrator Barrisch found the facts which gave rise to Wynn and Martin's discharge as follows:

On the particular day in question, August 20, [Martin] had completed the assembly of parts that she was doing but could do nothing further until other assemblies were affected further down the line and particularly by Ms. Wynn. According to Ms. Martin, because that work was not done, and frustrated over the

1. The parties stipulate that article XIII, § 2 of the collective bargaining agreement provides as follows:

If the grievance is not resolved in Step 3 of the grievance procedure, then either the Company or the Union within five (5) days after the decision of the general manager or his designee, may refer the grievance to arbitration by sending a written request, with a copy of such request sent promptly to the other party to the American Arbitration Association.

The arbitrator shall be selected from the American Arbitration Association in the following manner:

It shall be determined by lot which of the parties shall have the right to strike the first name from the panel. Thereafter, the Company and the Union shall alternately strike a name from the panel until but one (1) name remains. The last remaining arbitrator shall be the one to hear the dispute in question.

Such hearings as are required shall be conducted according to the Rules of the American Arbitration Association and shall be set as early as possible. The Arbitrator shall issue an opinion and award within thirty (30) days after the closing of the hearing, except in cases of discharge, in which the award and opinion shall be issued within five (5) days. In the event that discharge is found to be without just cause, the arbitrator shall order reinstatement with or without back pay, as appropriate. The award of the arbitrator shall be final and binding on both parties. The fee of the arbitrator and his expense shall be shared jointly by the Company and the Union.

In addition to his general powers, the arbitrator may command or restrain any act or conduct of the parties found to be in violation of this Agreement. The Arbitrator shall have no power to make any award which would change, amend, add to, or subtract from any provisions of this Agreement, or any Supplementary Agreements made hereto, and he shall have no authority to render a decision on any matter not submitted to him or any matter not covered by or excluded from this Agreement.

fact that she was not able to perform her own work, she walked down the line next to Ms. Wynn and started to perform those operations which would permit her to perform her own operations. Ms. Wynn in rather blunt language invited Ms. Martin to leave. Ms. Martin's response was equally blunt and profane. Ms. Wynn wagging her finger in Ms. Martin's face told her never to use that language to her again. At that point, according to Ms. Martin, Ms. Wynn struck her in the face with a pair of needle nose pliers. Ms. Wynn denies striking her.

The incident occurred at the beginning of the shift at approximately 7:00 a.m. Ms. Martin reported to the company dispensary and filled out an accident report (Company Exhibit No. 1). On the same day at about 8:55 a.m., she went to the emergency room of the Brentwood Hospital for treatment.

. . . . .

Again, I have no problem in finding, as I do, that Ms. Wynn struck Ms. Martin with a pair of pliers. I realize that the only evidence we have before us is the testimony of the two ladies, but we also have the reports from the dispensary and the Brentwood Hospital. The Brentwood Hospital report and its objective finding show that there were injuries to Ms. Martin's jaw and there is no testimony that the injury occurred any time prior to the event of August 20. In matters of this nature, the Arbitrator must rely on the credibility of the witnesses and I find Ms. Martin's testimony supported by the hospital reports to be credible.

. . . . .

Article XXVI to which I have referred before provides that an employee shall be immediately discharged for striking a fellow employee. I find that Ms. Wynn did strike Ms. Martin and I find nothing in the contract that provocation excuses the act of hitting a fellow employee. As a matter of fact, there was provocation on both sides.

. . . . .

The grievant, Bertha M. Martin, is to be reinstated as an employee of the company without loss of seniority but without any back pay or any other contractual benefits which might have accrued to her during the period of August 20 to the date of her reinstatement. Ms. Martin's grievance is otherwise denied. Ms. Annie Wynn's grievance is denied.

(Arbitrator's decision 3–7.)

It is undisputed that N.A.S. implemented the Arbitrator's decision and award by reinstating Martin as an employee of the company and denying reinstatement to Wynn.

## DISCUSSION AND LAW

This case involves the interrelationship between the deference given to the result of the grievance/arbitration procedures set forth in collective bargaining agreements and an individual's right to enforce his or her equal employment rights under Title VII. N.A.S. asserts that Wynn may not assert claims of discriminatory treatment in employment against N.A.S. when the claims arise out of N.A.S.' implementation of a final and binding arbitration award pursuant to the collective bargaining agreement. Wynn asserts she has an independent statutory right to enforce her equal employment rights, regardless of whether the alleged discrimination is due to enforcement of an arbitrator's decision pursuant to a collective bargaining agreement.

■ It is well established that a federal policy exists to promote industrial stabilization through the use of arbitration for labor disputes. It is equally well established that a degree of deference is given to an arbitrator's decision because of an arbitrator's knowledge of the customs and practices of a particular industry. *United Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior & Gulf Nativation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. Enterprise Wheel & Car*

*Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957); *Canton Printing Pressmen v. The Canton Repository*, 577 F.Supp. 455 (N.D.Ohio 1983).

Equally important, as the emphasis placed on arbitration of labor disputes in the scheme of federal rights, is the emphasis placed on an individual's rights to insure nondiscriminatory treatment in the employment process. In *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974) the Supreme Court was presented with the issue of whether "an employee's statutory right to a trial *de novo* under Title VII may be foreclosed by prior submission of his claim to final arbitration under the nondiscrimination clause of a collective-bargaining agreement." *Id.* at 38, 94 S.Ct. at 1015. In *Alexander* the plaintiff filed a charge of racial discrimination with the Colorado Civil Rights Commission which was referred to the Equal Employment Opportunity Commission prior to the arbitration hearing. The unfavorable employment action which gave rise to the plaintiff's labor grievance was the same action which gave rise to his claim of racial discrimination. The arbitrator ruled that the plaintiff had been discharged for just cause. Upon receipt of a right to sue letter from the EEOC, the plaintiff commenced a civil action against his employer alleging discrimination in violation of Title VII. The district court granted summary judgment for the defendant, holding that "having voluntarily elected to pursue his grievance to final arbitration under the non-discrimination clause of the collective-bargaining agreement, [the plaintiff] was bound by the arbitral decision and thereby precluded from suing his employer under Title VII." *Id.* at 43, 94 S.Ct. at 1017. The Court of Appeals for the Tenth Circuit affirmed *per curiam.* 466 F.2d 1209 (10th Cir.1972).

The Supreme Court disagreed reasoning as follows:

[T]he private right of action remains an essential means of obtaining judicial enforcement of Title VII.... In such cases, the private litigant not only redresses his own injury but also vindicates the important Congressional policy against discriminatory employment practices.

. . . . .

Moreover, the legislative history of Title VII manifests a Congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes. The clear inference is that Title VII was designed to supplement, rather than supplant, existing laws and institutions relating to employment discrimination. In sum, Title VII's purpose and procedure strongly suggests that an individual does not forfeit his private cause of action if he first pursues his grievance to final arbitration under the non-discrimination clause of a collective-bargaining agreement.

. . . . .

[I]n filing a lawsuit under Title VII, an employee asserts independent statutory rights accorded by Congress. The distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence. *Alexander*, 415 U.S. at 45, 48–51, 94 S.Ct. at 1018, 1019–1021 (footnote omitted).

*Alexander* is distinguishable from the case before the Court. In *Alexander* the plaintiff's Title VII action and grievance/arbitration pursuit grew out of the same adverse employment action. In the case before the Court, Wynn's Title VII action is predicated upon N.A.S.' implementation of the arbitrator's award.

N.A.S.' handling of the incident on August 20, 1981, between Wynn and Martin was clearly nondiscriminatory. Martin and Wynn were both discharged for fighting, without favoritism toward either employee. In fact, Wynn does not allege discrimination in her discharge, rather Wynn alleges it was discriminatory to reinstate Martin and not reinstate her. By reinstating Mar-

tin and not Wynn, N.A.S. simply followed the directive of the arbitrator pursuant to the collective bargaining agreement.

■ N.A.S. is placed in an untenable position if it is required to defend a Title VII action for simply implementing the arbitrator's decision and award pursuant to the collective bargaining agreement. If N.A.S. did not implement the arbitrator's award, and instead continued the termination of Martin and Wynn, the company would be subject to an action by the Union or Martin pursuant to § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, for failure to abide by the terms of the collective bargaining agreement. If N.A.S. were to rehire both Martin and Wynn, the company would be reinstating an employee found to have instigated a fight by striking a co-employee in the face with a pair of pliers. Furthermore, the binding arbitration clause of the collective bargaining agreement would be of little value to the company if it could not rely on the award of an independent arbitrator for fear of violating Title VII. Such a result is contrary to the federal policy of promoting industrial stabilization through the use of arbitration for labor disputes. If Wynn is permitted to proceed with her Title VII action, N.A.S.' third alternative would be to implement the arbitrator's decision, reinstating Martin but not reinstating Wynn, and defend an action in federal court for Title VII violations. This Court will not require an employer to make such a Hobson's choice.

■ Wynn asserts this action is not an appeal of the Arbitrator's decision, but is an attempt to enforce her independent statutory right to be free from discrimination in employment. The Court disagrees. N.A.S. implemented the arbitrator's decision, without independently reinstating either employee. The basis of Wynn's complaint is that she is dissatisfied with the result of the binding arbitration. If Wynn is of the belief that the Arbitrator's decision is premised upon prejudice or discriminatory activity, she is not without remedies. If her Union did not represent her fairly Wynn can pursue an action under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, against the Union for breach of its duty of fair representation and against N.A.S. for breach of the collective bargaining agreement. *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976). Wynn also has the option of bringing an action to vacate the arbitrator's award if she believes the arbitrator, or his decision, evidences bias against her because of her race or any other reason. 9 U.S.C. § 10.[2]

## CONCLUSION

Pursuant to the reasons set forth above, an employee cannot proceed against an employer on claims of employment discrimination in violation of 42 U.S.C. §§ 1981, 2000e *et seq,* when the alleged discriminatory activity by the employer is the implementation of an arbitrator's award pursuant to a collective bargaining agreement entered into between the employee's union, and the employer. Accordingly, N.A.S.' motion for summary judgment is granted.

IT IS SO ORDERED.

---

**2.** 9 U.S.C. § 10 provides:

In either of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—

(a) Where the award was procured by corruption, fraud, or undue means.

(b) Where there was evident partiality or corruption in the arbitrators, or either of them.

(c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in re-

fusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

(d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

(e) Where an award is vacated and the time within which the agreement required the award to be made has not expired the court may, in its discretion, direct a rehearing by the arbitrators.