John BAUCOM,

v.

John E. POTTER, Postmaster General.

No. CIV. WMN–98–2625.

United States District Court, D. Maryland.

Sept. 17, 2002.

30120 and the recall remains under the jurisdiction and control of the NHTSA.

vin Runyon, Postmaster General, John E. Potter, Postmaster General.

## MEMORANDUM

NICKERSON, District Judge.

Before the Court are cross motions for summary judgment. Paper Nos. 68 (Defendant's) and 71 (Plaintiff's). The motions are fully briefed. Upon a review of the motions and the relevant case law, the Court determines that no hearing is necessary and that Defendant's motion should be denied, and Plaintiff's motion granted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is an individual who has suffered for most of his adult life from alcoholism, depression, and obsessive-compulsive disorder. He brings a claim pursuant to section 501 of the Rehabilitation Act of 1973, asserting that his former employer, the United States Postal Service, terminated his employment on account of these disabilities. He also asserts that Defendant refused to provide him a reasonable accommodation for those disabilities. The facts are largely undisputed and are as follows.[1]

Plaintiff began employment with Defendant in 1988. Initially, Plaintiff had a good working relationship with his fellow employees and received at least adequate performance evaluations. In the summer of 1994, however, Plaintiff began exhibiting signs of alcohol abuse and engaging in what Defendant has described as bizarre, erratic, and violent behavior in the workplace. In June of 1994, after a co-worker reported that Plaintiff had exhibited some particularly threatening and offensive be-

Marc Greidinger, Law Office of Marc Greidinger, Springfield, VA, for John Baucom.

Andrea Leahy–Fucheck, Whiteford, Taylor and Preston, Larry D. Adams, Thomas M. DiBiagio, Office of the United States Attorney, Baltimore, MD, for Mar-

1. Most of the factual background that follows is taken from Plaintiff's pleadings and exhibits. In its pleadings, Defendant provided a much briefer description of the factual background of this dispute, but does not challenge to any substantial degree the additional background supplied by Plaintiff.

havior, Plaintiff was placed on emergency off-duty without pay status for 14 days and directed to undergo a fitness for duty exam. After some initial confusion as to who was to schedule and pay for the fitness for duty exam, Plaintiff appeared for that exam on July 29, 1994.

While Plaintiff appeared for the exam, Dr. Lawrence Brain, the psychiatrist, reported that he was unable to complete his evaluation. The parties disagree as to the reason that Brain was unable to do so. Defendant states that Plaintiff simply refused to cooperate. Plaintiff explains that, because Defendant had failed to inform him of the specifics of the disciplinary charges brought against him, he was uncomfortable answering Brain's questions. Brain acknowledged that, at the time of the examination, the specific concerns of Defendant had not been communicated to him. Pl.'s Exh. U, July 29, 1994 Letter from Dr. Brain to Def.'s Human Resource Manager.

Plaintiff, nonetheless, was allowed to return to duty. Concerned about Plaintiff's recent absences, an "attendance control" official referred Plaintiff to Defendant's Employee Assistance Program (EAP). Plaintiff met with an EAP counselor on August 31, 1994 and reported that he had a drinking problem, and that he believed that his drinking was interfering with his interpersonal relationships. The counselor recommended that Plaintiff be placed on sick leave for 14 days beginning September 1, 1994. She also opined that "if the employee follows the outlined therapeutic recommendations, future problems should be eliminated." Pl.'s Exh. Y. Plaintiff successfully completed the dependency treatment program.

Despite Plaintiff's successful completion of the treatment program, when Plaintiff tried to return to work on September 21, 1994, he was denied access to the facility and was issued a second emergency sus-

pension. The reason given for the suspension was as follows:

CONDUCT UNBECOMING A POSTAL EMPLOYEE.
SPECIFICALLY, FAILURE TO FOLLOW INSTRUCTIONS AND THREATENING FELLOW WORKERS WITH BODILY HARM.

Pl.'s Exh. aa, September 21, 1994 Suspension Notice. The Notice also informed Plaintiff that he must report for another fitness for duty examination.

Again, there was disagreement between Plaintiff and Defendant as to who was to schedule and pay for the examination. Defendant took the position that, as Plaintiff had failed to cooperate with the last examination, it had no duty to pay for a second examination. Plaintiff indicated that he was willing to be reexamined, but requested that Defendant first "provide the examining physician with a reason for the examination—that is, a statement of why you believe I may not be fit for duty," so that the examination could be more productive. Pl.'s Exh. cc., undated letter from Plaintiff to Stan Gordon, Supervisor. On January 20, 1995, Defendant issued Plaintiff a notice indicating that he would be removed from his position at the Post Office because of his failure to schedule the fitness for duty examination.

Under his union bargaining agreement, Plaintiff grieved his removal. As a result of the grievance process, Defendant retreated from its position that Plaintiff must schedule and pay for the examination. Defendant also withdrew the January 20, 1995 Notice of Removal.

On May 11, 1995, Plaintiff reported Dr. Bruce Smoller for his second psychiatric fitness exam, as ordered. During the course of the examination, Smoller requested that Plaintiff take the Minnesota Multiphasic Personality Inventory [MMPI]. According to Plaintiff, Smoller

told him that he would "feel better" if Plaintiff took the MMPI, but also gave him the option to decline to take it. Plaintiff elected not to take the MMPI. Smoller then issued a report in which he stated that, from his observations during the exam, "there is no reason why this patient cannot work. However, I cannot say this with finality and will not until the [the MMPI] is done and returned." Pl.'s Exh. gg.

In response to Smoller's report, Defendant issued a second Notice of Removal which stated that Plaintiff would be terminated from his position because he "fail[ed] to follow official instructions, in that [he has] repeatedly refused to fully submit to fitness for duty examinations." Pl.'s Exh. ii, May 31, 1995 Notice of Removal. Plaintiff again grieved his removal and his grievance was arbitrated at a hearing held on October 1, 1996.

On November 18, 1996, the arbitrator issued a decision in which she agreed with Defendant that Plaintiff had on two occasions declined to fully participate in psychiatric/psychological fitness for duty examinations, and that a failure to fully cooperate could amount to a failure to report, which would be a removable offense. The arbitrator also noted, however, that before imposing the severest penalty, that of removal, Defendant failed to afford Plaintiff any "opportunity to tell his side of the story." Pl.'s Exh. hh, November 18, 1996 Arbitration Award at 8. Had it done so, and then followed up with an inquiry of Smoller, Defendant could have determined if Smoller had offered Plaintiff the opportunity to decline the diagnostic test as Plaintiff claims. The arbitrator concluded that this "absence of a Managerial inquiry in this regard constitutes a denial of due process warranting recision of the discipline." *Id.* The arbitrator then issued an award, which she summarized as follows,

The grievance is granted to the extent that within thirty days the grievant shall be scheduled for a psychiatric/psychological fitness for duty examination. If he is found fit for duty, he shall be reinstated without loss of seniority or benefits, but with no back wages. If he fails to fully cooperate with the physician, he shall immediately be discharged. *Id.* at 1.

On December 26, 1996, Plaintiff reported to Dr. Morris Chalick, an outside consultant hired by Defendant, for a third fitness for duty examination. On or about January 23, 1997, Dr. Chalick issued his report, in which he made the following recommendation:

At the present time, the employee remains moderately depressed, beset with alcoholism, and is focused solely on regaining his job. Considering his inability to mobilize himself during the past 2 years and taking into account his drinking problem, it is felt that he is not yet ready to return to work.

It is recommended that the employee seek psychotherapy for his depression and treatment for his alcoholism. It is further strongly suggested that he seek career counseling when his general physical and psychiatric health have improved.

After 3 months of alcohol treatment, the employee status could be reviewed. Pl.'s Exh. jj, Summary of Psychiatric Consultation.

On or about January 21, 1997, Dr. Akintoye Adelakun, a postal service physician, reviewed Dr. Chalick's report and made a finding that Plaintiff was "not fit for duty." Based upon this finding, Defendant decided to terminate Plaintiff. Plaintiff first learned of his termination on or about February 28, 1997, when he received a copy of a letter sent by a Senior Labor Relations Specialist employed by Defen-

dant, to the President of Plaintiff's union which stated in its entirety,

> Mr. Baucom was seen for a psychiatric fitness for duty exam on January 21, 1997, by Dr. Morris Chalick. He was considered not fit for duty based on the report filed by Dr. Chalick. As a result of Mr. Baucom being found unfit for duty and in accordance with the arbitration award, he will be removed from the rolls effective January 21, 1997.

Pl.'s Exh. ll, February 17, 1997 letter from Julia Bills to John Burke. Prior to receipt of this letter, Plaintiff had not been informed as to the results of Chalik's examination.

After exhausting administrative remedies, Plaintiff filed the instant action alleging discrimination on the basis of race, sex. and disability. He subsequently abandoned his race and sex discrimination claims and has clarified in his more recent pleadings that his disability claims include the claim that he was fired on account of his disabilities and also that Defendant failed to provide him with reasonable accommodations for those disabilities.[2] In May of 2001, Defendant moved for summary judgment on the ground that Plaintiff's claims were barred under a "Settlement Agreement" entered into by the parties in March of 1997. The Court denied that motion, finding that the language of the proffered agreement was not so broad so as to bar the instant claims. *See,* Memorandum and Order dated October 12, 2001.

Defendant has again moved for summary judgment, arguing this time that Plaintiff's disability discrimination claim is barred as a collateral challenge to the November 1996 arbitration award. Defendant also argues that, if not barred by the arbitration award, Plaintiff's disparate treatment claim fails because he was terminated on account of his misconduct, not because of his alleged disability, and his accommodation claim fails because Plaintiff never requested a reasonable accommodation for his disability until after he was terminated from his position.[3] Plaintiff has filed a cross motion, arguing that the undisputed facts clearly establish that he was discriminated against on the basis of his disability.

## II. LEGAL STANDARD

A moving party is entitled to summary judgment only if it can show that there exists no genuine issue as to any material fact, and that it is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

█ When both parties file motions for summary judgment, the court applies the same standards of review. *Taft Broad-*

---

2. In his motion for summary judgment, Plaintiff has identified several "other forms of discrimination," including, Defendant's use of the MMPI, Defendant's inclusion of "good mental health" as a requirement for continued employment and, Defendant's policy of evaluating supervisor's performance based in part upon the amount of sick leave used by those under their supervision. The Court will not consider these as separate claims as they are well beyond the scope of the complaint.

3. Defendant raises a fourth argument for the first time in its reply brief, *i.e.,* that at the time that Plaintiff was refused a reasonable accommodation or terminated from his employment, he was not an individual with a disability as that term is defined under the Rehabilitation Act. While the Court will briefly address the issue, *infra,* the Court agrees with Plaintiff that, if Defendant wished to raise this argument, it should have done so in the summary judgment motion, and not in the reply. Because Defendant did not raise this issue until it filed its reply, the Court will grant Plaintiff's Motion to Supplement the Record, Paper No. 81, to allow Plaintiff the opportunity to place evidence into the record supporting a finding that he is an individual with a disability.

*casting Co. v. United States,* 929 F.2d 240, 248 (6th Cir.1991); *ITCO Corp. v. Michelin Tire Corp.,* 722 F.2d 42, 45 n. 3 (4th Cir.1983) ("The court is not permitted to resolve genuine issues of material facts on a motion for summary judgment—even where ... both parties have filed cross motions for summary judgment.")(emphasis omitted), *cert. denied,* 469 U.S. 1215, 105 S.Ct. 1191, 84 L.Ed.2d 337 (1985). The role of the court is to "rule on each party's motion on an individual and separate basis, determining, in each case, whether a judgment may be entered in accordance with the Rule 56 standard." *Towne Mgmt. Corp. v. Hartford Acc. and Indem. Co.,* 627 F.Supp. 170, 172 (D.Md.1985)(quoting Wright, Miller & Kane, *Federal Practice and Procedure: Civil* 2d § 2720 (2d ed.1993)).

### III. DISCUSSION

A. *Has Plaintiff Established Causes of Action for Disparate Treatment and Denial of Reasonable Accommodation?*

▆▆▆ To establish a cause of action for disparate treatment under the Rehabilitation Act,[4] a plaintiff must show that 1) he has a disability, 2) he is otherwise qualified for the position, and 3) he suffered an adverse employment action solely because of his disability. *Halperin v. Abacus Technology Corp.,* 128 F.3d 191 (4th Cir. 1997), *abrogated on other grounds by, Baird ex rel. Baird v. Rose,* 192 F.3d 462 (4th Cir.1999). To establish a failure to accommodate claim, a plaintiff must show that 1) he is an otherwise qualified individual with a disability, *i.e.,* he is able to perform the essential functions of the job in question with or without reasonable accommodation and 2) that if a reasonable accommodation is necessary that the denial of the accommodation was made in a discriminatory fashion. *Bryant v. Better Business Bureau of Greater Maryland, Inc.,* 923 F.Supp. 720, 733 (D.Md.1996).

▆▆▆ Reviewing the record, the Court finds it abundantly clear that Plaintiff can establish both causes of action. Plaintiff is plainly an individual with a disability, Defendant's last ditch attempt to argue to the contrary, notwithstanding. To be considered disabled within the meaning of the Rehabilitation Act, an individual must show that he suffers from a medical condition that "substantially limits" his ability to perform a "major life activity." *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 490, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). To be "substantially limiting," an impairment must interfere with a major life activity "considerably" or "to a large degree" and the impairment must be permanent or long term. *Pollard v. High's of Baltimore,* 281 F.3d 462, 467–68 (4th Cir.2002). "Major life activities" include only those activities that are of central importance to daily life, such as, caring for oneself, preforming manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. 29 C.F.R. § 1630.2(i).

Through his own affidavit and the submission of medical records, Plaintiff presents a portrait of his existence during the relevant time period where his alcoholism placed him in a near constant stupor and prevented him from performing "virtually every major life activity except drinking." Plaintiff's Declaration at ¶¶ 13–16. Plaintiff's expert, Dr. Michael Glasser, after examining Plaintiff and reviewing his medical records, concluded that Plaintiff's diagnosed conditions limited Plaintiff's major

---

4. Because Plaintiff was a federal employee, his claims are governed by the Rehabilitation Act, instead of the Americans with Disabilities Act. Because the provisions of the two acts are identical, courts often look to case law interpreting the one act to construe the provisions of the other.

life activities of sleeping, caring for himself, caring for his medical needs, and that Plaintiff "was unable to work at any job" while his alcoholism remained untreated. Pl's Exh. F.

Dr. Chalick, Defendant's examining physician, also recognized that Plaintiff's alcoholism and depression prevented Plaintiff from performing the major life activity of working. *See* Pl.'s Exh. jj. Chalick described Plaintiff as "moderately depressed" and "beset with alcoholism," and then concluded, "[c]onsidering his inability to mobilize himself during the past 2 years and taking into account his drinking problems, it is felt that he is not yet ready to return to work." *Id.* Chalick's further recommendation that Plaintiff seek career counseling, but only after his general physical and psychiatric health have improved, *id.*, is an indication that Chalick also believed that Plaintiff's disability precluded him, not only from returning to his own job, but to any job until his conditions were treated.[5]

It is also apparent that Plaintiff could have performed, with reasonable accommodation, the work required for his former position for the Postal Service. Dr. Glasser opines in his affidavit that,

in December 1996 to January 1997, Mr. Baucom could have returned to work following a brief period of leave from his job for inpatient detoxification and alcohol treatment, followed by outpatient alcohol treatment and psychiatric care. With appropriate inpatient treatment, outpatient care, and followup, Mr. Baucom could have returned to his regular duties in as little as three weeks, and would almost certainly have been ready to return to work within two weeks.

Pl.'s Exh. F, Glasser Aff. at ¶ 10. In fact, shortly after his termination by Defendant, Plaintiff attended a detoxification program and an inpatient treatment program through the Veteran's Administration and reports that he has been alcohol free since 1997.

■ Defendant offers no serious challenge to Plaintiff's contention that allowing him to use his accumulated leave time to receive treatment for his alcoholism would have been a reasonable accommodation. Plaintiff has demonstrated that, under Defendant's own policies, leave should have been available to Plaintiff to obtain the necessary treatment. *See* Pl.'s Motion at 15–17. Courts have recognized that a leave of absence to obtain medical treatment for alcoholism can be a reasonable accommodation if it is likely that, following treatment, the plaintiff would be able to safely return to his duties. *See, e.g., Rodgers v. Lehman,* 869 F.2d 253, 259 (4th Cir.1989) (holding that alcoholic employee should have been given the opportunity to participate in a rehabilitation program using accrued or unpaid leave, and that the defendant's refusal to allow plaintiff to use such leave was a violation of Rehabilitation Act); *Schmidt v. Safeway Inc.,* 864 F.Supp. 991 (D.Or.1994). Again, Defendant makes no argument that leave was not available to Plaintiff, or that allowing him to obtain treatment, and then return to his position, would have created any undue hardship for Defendant.

The record also makes it abundantly clear that, instead of allowing Plaintiff the reasonable accommodation of using leave to obtain the treatment recommended by the physician Defendant itself had retained, Defendant terminated Plaintiff on

---

**5.** The Court also notes that Plaintiff would fall under the coverage of the Rehabilitation Act regardless of whether he was actually disabled as it is clear that his employer regarded him as disabled. *See* 42 U.S.C. § 12102(2) (definition of individual with a disability includes those "regarded as having such an impairment").

account of his disability. Defendant terminated Plaintiff because Dr. Chalick found Plaintiff unfit for duty, and Dr. Chalick found him unfit for duty solely on account of his disabilities—alcoholism and depression.

In moving for summary judgment, Defendant maintains that "the Postal Service initiated Plaintiff's removal not because of his condition, but because of his failure to cooperate with the fitness for duty examination." Def.'s Mot. at 12. Defendant's contention that "Plaintiff's removal action was predicated on his misconduct, not his alleged disability," completely ignores or misinterprets the effect of the November 18, 1996 Arbitration Award. It is true that Defendant attempted to remove Plaintiff on the basis of Plaintiff's decision not to take the MMPI when he submitted to the second fitness for duty examination, a decision which Defendant deemed a failure to cooperate. It is also true, however, that the arbitrator ordered that this removal action be rescinded. *See* Award at 7, 8 ("The absence of a Managerial inquiry in this regard constitutes a denial of due process warranting recision of the discipline."). While the arbitrator also indicated that Plaintiff could be dismissed if he were to fail to cooperate with the third fitness for duty examination which she required as part of her award, Defendant makes no argument that Plaintiff refused, in any way, to cooperate with the third examination.

Finding that Plaintiff has more than met the standard of proof required to establish his disparate treatment and failure to accommodate claims, the Court turns briefly to the two remaining arguments that Defendant advances to escape liability: 1) that Plaintiff's disability discrimination claim is barred as a collateral challenge to the arbitration award, and 2) that Plaintiff's accommodation claim is barred because Plaintiff never specifically asked for an accommodation.

**B.** *Is this Action a Collateral Attack on an Arbitration Award?*

 Defendant's "arbitration award" argument is based upon the fairly well-established principle that a discrimination claim cannot be premised on an employment action that was taken in the course of implementing an arbitration award. *See, Wynn v. North American Systems, Inc.,* 608 F.Supp. 30 (N.D.Ohio 1984). The rationale for this rule is straightforward, *i.e.,* that employers of unionized workers ought not to incur liability for doing what they were required to do in order to comply with the terms of the binding arbitration clause of the collective bargaining agreement. In balancing the potential conflict between the federal policy to promote stability in labor relationships through the use of binding arbitration in labor disputes and an individual's right to insure nondiscriminatory treatment in the workplace, courts have generally decided in favor of recognizing the binding nature of the arbitration award. *Id.* at 32–34. Courts have also noted that, if the employee believes that the arbitration award was discriminatory, there are other remedies available, including, bringing an action to vacate the arbitration award or filing an action against the union for breach of the duty of fair representation. *Id.* at 34.

For the principle enunciated in *Wynn* to be applicable, however, the adverse employment action alleged to have been discriminatory must have been taken pursuant to a binding arbitration award. That is not the case here. Like the settlement agreement that was the subject of Defendant's last summary judgment motion, the arbitration award simply does not say what Defendant might wish that it says.

As noted above, the arbitrator clearly stated that Defendant's removal order should be rescinded due to Defendant's failure to conduct a pre-disciplinary investigation which deprived Plaintiff his due process rights. It is true that the arbitrator also ordered Plaintiff to submit to another fitness for duty examination and that she also defined what would be the ramifications of two possible outcomes of that examination: 1) if Plaintiff was found fit for duty, he was to be reinstated; and 2) if Plaintiff failed to fully cooperate with the physician, he was to be immediately discharged. The arbitrator did not say, however, as Defendant would assert, that if Plaintiff fully cooperated with the examining physician but was nonetheless found unfit to return to duty at that time, he must also be immediately discharged.

As if in tacit acknowledgment that the award, as issued by the arbitrator, did not require Plaintiff to be discharged if found not immediately fit for duty, Defendant argues that its decision to discharge Plaintiff cannot be challenged as discriminatory as long as Defendant *understood,* rightly or wrongly, that the arbitration award permitted that result. *See* Def.'s Mot. at 4 ("Because both *the Postal Service* and the Union *read the award as providing* that Baucom should be removed unless he was fit for duty ... he was removed from the rolls."); Reply at 7 ("The undisputed fact remains that the Postal Service did not reinstate Plaintiff *because it understood* that the arbitration decision did not provide for it")(emphasis added). There are at least two major difficulties with Defendant's "mistaken interpretation" argument. First, aside from the passing mention of the arbitration award in the February 17, 1997 letter to Plaintiff's union, Defendant provides no real evidence as to what Defendant actually concluded the award allowed or required, who it was in Defendant's organization that reached this conclusion, or how

that conclusion was reached. Second, and more significantly, Defendant provides no authority for the position that an employer should be immunized from liability for a discriminatory action based upon a misunderstanding that an arbitration award allowed that action. Plaintiff correctly notes the "devastating practical results" that such a rule would have on discrimination law. Opp. at 49. Under such a view, the bounds of discriminatory, yet immunized, action would only be limited by the creativity of the employer's attorneys.

### C. *Was Defendant Apprized of Plaintiff's Need for Accommodation?*

The Rehabilitation Act anticipates a flexible interactive process in which the employer and employee work together in order to determine the scope of the employee's limitations, as well as the specific accommodations that would be necessary in order to permit the employee to continue working. *See, Bryant v. Better Business Bureau of Greater Maryland, Inc.,* 923 F.Supp. 720, 736 (D.Md.1996). Generally, this interactive process is triggered by the employee's specific request for an accommodation. Defendant argues that this must always be the trigger and that Plaintiff cannot bring an accommodation claim because he did not personally and specifically make a request for the use of leave for inpatient care prior to his termination. *See* Def.'s Mot. at 12–14.

The law, however, does not impose such an artificially stringent rule. Courts have also allowed a communication from a physician to serve as an accommodation request, particularly in situations involving mental illness or addictions. *See, e.g., Bultemeyer v. Fort Wayne Community Schools,* 100 F.3d 1281, 1285 (7th Cir. 1996); *Criado v. IBM Corporation,* 145 F.3d 437, 444 (1st Cir.1998). Here, the physician that Defendant retained to ex-

amine Plaintiff informed Defendant that Plaintiff was "focused solely on regaining his job" but would be unable to do so without first receiving inpatient treatment. Under these circumstances, Defendant cannot maintain that it was unaware of either the need for an accommodation, or Plaintiff's desire for that accommodation.

Defendant's argument is particularly disingenuous in this instance where Defendant terminated Plaintiff before he ever learned of the results of Chalick's fitness for duty exam and Chalick's recommendation that Plaintiff should receive inpatient treatment before returning to work. While Defendant faults Plaintiff for not requesting an accommodation prior to his termination, Defendant never explains how Plaintiff was to know to ask for something that he had not been told that he needed.

## IV. CONCLUSION

The evidence submitted with the motions for summary judgment establishes that Plaintiff is be entitled to judgment, as a matter of law, as to both his disparate treatment and failure to accommodate claims. Accordingly, the Court will deny Defendant's motion and grant Plaintiff's motion, at least as to liability.

As to damages, Plaintiff makes a brief reference to those damages to which he believes he would entitled at the end of his motion, Pl.'s Motion at 59–60, to which Defendant offers no response. In his brief, Plaintiff acknowledges that there are several categories of damages that cannot be calculated at this time. Among the issues that would first need to be resolved is when and how Plaintiff might be reinstated. To resolve the issue of appropriate damages, the Court requests that counsel meet and confer to determine if they can agree on an appropriate course of action and measure of damages. If they are unable to reach such an agreement, the Court will issue a briefing schedule

related to those issues. A separate order consistent with this memorandum will issue.