**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 21-1647

JAY HANNAH,

Plaintiff - Appellant,

v.

UNITED PARCEL SERVICE, INC.,

Defendant - Appellee.

Appeal from the United States District Court for the Southern District of West Virginia, at Charleston.  Joseph R. Goodwin, District Judge.  (2:20-cv-00120)

Argued:  January 26, 2023                          Decided:  July 10, 2023

Before NIEMEYER, RUSHING, and HEYTENS, Circuit Judges.

Affirmed by published opinion.  Judge Niemeyer wrote the opinion, in which Judge Rushing and Judge Heytens joined.

**ARGUED:**  Hoyt Eric Glazer, GLAZER SAAD ANDERSON, LC, Huntington, West Virginia, for Appellant.  Richard M. Wallace, LITTLER MENDELSON, P.C., Charleston, West Virginia, for Appellee.  **ON BRIEF:**  Kameron Miller, LITTLER MENDELSON, P.C., Charleston, West Virginia, for Appellee.

NIEMEYER, Circuit Judge:

When Jay Hannah, a package delivery driver for United Parcel Service, Inc. ("UPS"), injured his hip and buttocks, he requested that he be allowed to drive his route with a smaller truck that would have a softer suspension or, alternatively, that he be assigned to an "inside job." Because UPS had determined that the route that Hannah had been driving required a larger truck and there were no openings for inside work at the time, UPS instead accommodated Hannah by allowing him to take an unpaid leave of absence until his hip and buttocks healed and he could return to work.

Hannah commenced this action under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, alleging that UPS's refusal to provide him with the accommodations he requested violated his rights under the ADA. The district court granted summary judgment to UPS, concluding, as a matter of law, that Hannah had not shown that the accommodations he requested were reasonable and that Hannah's unpaid leave of absence constituted a reasonable accommodation in the circumstances.

For the reasons given herein, we affirm.

I

Hannah, who had been a UPS employee in Parkersburg, West Virginia, since 2008, began experiencing pain in his lower back, hip, and buttocks in December 2017. His condition was then diagnosed as hip bursitis. At the time, Hannah was assigned to a delivery route, for which he had bid under the governing collective bargaining agreement and which, as UPS had determined, required him to drive a truck with a 600-cubic-foot

2

capacity to carry all the packages to be delivered on his route. That size truck, however, had a stiff suspension, which made for a rough ride that aggravated Hannah's injury. After UPS accommodated his request for a better padded seat, he still could only work sporadically until October 2018. At that time, his physician diagnosed him with sacroiliitis and cleared him to return to work, so long as he avoided prolonged sitting until November 1, 2018. Hannah then made a request to UPS for an accommodation under the ADA to provide him with a smaller vehicle, a van with a cargo capacity of 300 to 400 cubic feet, which would have a softer suspension and thus would provide him with an easier ride. Alternatively, he requested assignment to an "inside job" within a 30-mile radius for which he was qualified until he could return to his route.

UPS officials met with Hannah and then conferred among themselves and determined that UPS could not provide Hannah with the smaller vehicle he had requested because such a van would have an insufficient capacity to serve his route. Thus, providing Hannah with such a van would require either that Hannah give a part of his route to another driver or that Hannah himself complete the route in multiple trips. UPS found neither option to be feasible, as each would violate the governing collective bargaining agreement. With respect to inside work, UPS advised Hannah that it had no openings at the time, but it would consider him for any such opening when it occurred. While UPS thus denied Hannah the particular accommodations he requested, it did allow him to retain his job and take leave without pay until he could return to work. And after several months, Hannah did return to work, continuing to drive the route to which he was assigned in a truck suited for that route.

3

After returning to work, Hannah commenced this action against UPS under the ADA for its failure to provide him with either of the accommodations that he requested. The district court granted UPS's motion for summary judgment, concluding that Hannah failed to carry his burden of demonstrating that he could perform the essential functions of his job with the accommodations requested. The court also concluded that the leave of absence that UPS provided was in fact a reasonable accommodation, even though not one that Hannah had requested.

This appeal followed.

II

The issue in this case turns on whether Hannah, who was temporarily disabled, requested a reasonable accommodation under the ADA and whether UPS, in providing a different accommodation that was not requested by Hannah, complied with its duties in response to Hannah's request.

The record shows that because of his hip and buttocks condition, Hannah was unable to drive the 600-cubic-foot truck provided to him for delivering the route's packages because the truck's stiff suspension resulted in too harsh a ride. He requested that UPS provide him with a 300- to 400-cubic-foot van, which had a softer suspension and which, he claimed, would enable him to drive his route. Hannah acknowledged that the smaller van would need to hold all of the packages for delivery on his assigned route. He also stated that he was not sure that such a van would be able to hold all of the packages because "I've never got a chance to try it out." But he agreed that if such a van could not

4

accommodate all of the packages, his request would require that he "displace somebody from another route," implicating the collective bargaining agreement. Alternatively, he requested "an inside job," such as washing vehicles or sorting packages.

UPS rejected Hannah's requests. In defending its position, UPS explained that delivery routes were assigned to drivers based on seniority and their bids for the routes, as provided by the collective bargaining agreement. And the size of vehicle assigned to each route was based on the expected volume of packages for that route. Thus, a 600-cubic-foot truck was assigned to Hannah's route because UPS had determined that that was the size of truck that the route required. In addition, UPS noted that the collective bargaining agreement restricted drivers to working no more than 9.5 hours per day. In light of these restrictions, it explained that a 300- to 400-cubic-foot van would not be able to service Hannah's route — Hannah "would have . . . [to] put [work] on another driver or drivers . . . [w]hich potentially would put them over 9.5 hours dispatched; [and] they are protected from working over 9.5 hours in the collective bargaining agreement." And, as UPS explained, Hannah's doing the route himself with a smaller truck would require multiple trips. That would not only require him to work more than 9.5 hours but would also be unreasonable because of the substantial increase in costs in terms of maintenance, wear and tear on the vehicle, and fuel and oil usage. UPS also noted that it would be a "safety risk to have Mr. Hannah continue to drive up and down the road all day long . . . [b]ecause it is proven the more miles that you incur, the more at risk you are to have an auto accident." As to an inside job, UPS told Hannah that it had no suitable vacancies at the time but that it would continue to look for one. In these circumstances, UPS provided Hannah with the

accommodation of granting him an indefinite unpaid leave of absence with the option to return to work when his hip and buttocks healed.  Hannah did not agree that that was a reasonable accommodation, although he remained on leave until finally returning to work several months later.

The issue, in short, is whether the accommodations Hannah requested were reasonable under the ADA and whether the accommodation UPS did provide was a reasonable one, albeit not agreeable to Hannah.

The ADA prohibits an employer from discriminating against an employee with a disability if the employee can perform the essential functions of his job with "reasonable accommodation."  42 U.S.C. § 12112(a), (b)(5); *id*. § 12111(8).  In making a claim under the ADA for a failure to accommodate, the employee has the burden of establishing a prima facie case by showing "(1) that he was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position; and (4) that the employer refused to make such accommodations."  *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013) (cleaned up).  In carrying out the burden of establishing a reasonable accommodation in the context of a workplace governed by a collective bargaining agreement, the employee must show either that the requested accommodation would not violate the agreement or that some "special circumstances" exist that nonetheless make "the requested accommodation . . . reasonable on the particular facts."  *US Airways, Inc. v. Barnett*, 535 U.S. 391, 403, 405 (2002) (cleaned up).

6

In this case, Hannah did not meet this burden. While he did request an accommodation of driving a smaller van with a softer suspension, he acknowledged that such a van would have a cargo capacity of 300 to 400 cubic feet, whereas the vehicle that UPS had designated as necessary to perform his route had a capacity of 600 cubic feet. And, as UPS determined, such a shortfall in capacity would prevent Hannah from completing his route in one trip and within 9.5 hours. UPS explained that, in that circumstance, it would have been necessary to adjust another driver's route to take on part of Hannah's route. But each scenario — requiring work longer than 9.5 hours or adjusting another driver's route — would violate the collective bargaining agreement, as UPS explained. Routes were assigned by seniority pursuant to a bidding process, and drivers could work no more than 9.5 hours per day. Hannah has provided no solution to these problems arising from his request to be given a smaller truck or van.

Moreover, an accommodation is not reasonable if it does not "enable[] the employee to perform the essential functions of the job." *Myers v. Hose*, 50 F.3d 278, 283 (4th Cir. 1995). Here, Hannah has not addressed whether his proposed accommodation would require alteration of the "essential functions" of the job he had previously occupied as determined by UPS. UPS designed the delivery routes and assigned trucks to them with the capacity that it determined was needed to complete the routes. And when an employee, such as Hannah, bid on the route, the essential functions of the job of driving that route were so defined. Consequently, when Hannah sought an accommodation for his injury, part of his burden of demonstrating its reasonableness was to show that it would allow him to perform the essential functions of the position. *See* 42 U.S.C. § 12111(8); *Wilson*, 717

7

F.3d at 345.  And to satisfy that burden, he is not free simply to redefine the job.  The ADA directs that consideration be given "to *the employer's judgment* as to what functions of a job are essential."  42 U.S.C. § 12111(8) (emphasis added).  The ADA's regulatory guidance explains this point in detail, stating:

> It is important to note that the inquiry into essential functions is not intended to second guess an employer's business judgment with regard to production standards, whether qualitative or quantitative, nor to require employers to lower such standards. . . .  If an employer requires its typists to be able to accurately type 75 words per minute, it will not be called upon to explain why an inaccurate work product, or a typing speed of 65 words per minute, would not be adequate.  Similarly, if a hotel requires its service workers to thoroughly clean 16 rooms per day, it will not have to explain why it requires thorough cleaning, or why it chose a 16 room rather than a 10 room requirement.

29 C.F.R. pt. 1630, app. § 1630.2(n).  Yet, Hannah's requested accommodation for a smaller truck or van fails to give the appropriate consideration to UPS's requirements for his job; he fails to demonstrate that he can, with his requested accommodation, "perform the essential functions of the employment position" that he held before his injury.  42 U.S.C. § 12111(8).  His requested accommodation was accordingly not reasonable within the meaning of the ADA.

In addition, Hannah has not shown that there was a vacancy that would allow him to do inside work.

In short, Hannah has not carried his burden of demonstrating that the accommodations he requested were reasonable.

In response to Hannah's request for accommodation and in light of the lack of reasonable alternatives, UPS decided to place Hannah on an indefinite unpaid leave of

8

absence until he could return to work.  But Hannah complains that "[he] did not want medical leave" and that such leave "prevented [him] from earning his wages."  Yet, he provides no authority as to why that accommodation was not a reasonable one in the circumstances.  He only argues that it was not the accommodation he requested and that it provided him with no wages.

First, it is well settled that the "ultimate discretion" to choose among reasonable accommodations rests with the employer. *Reyazuddin v. Montgomery Cnty.*, 789 F.3d 407, 415–16 (4th Cir. 2015) (quoting *Hankins v. The Gap, Inc.*, 84 F.3d 797, 800 (6th Cir. 1996)).  And it is also clear that the ADA specifically authorizes unpaid leave as a reasonable accommodation.  The Act provides that a "reasonable accommodation" may include "job restructuring, . . . modified work schedules, . . . and other similar accommodations."  42 U.S.C. § 12111(9)(B).  And these examples are further explained in regulatory guidance to include "permitting the use of accrued paid leave or *providing additional unpaid leave for necessary treatment*."  29 C.F.R. pt. 1630, app. § 1630.2(o) (emphasis added); *see also Wilson*, 717 F.3d at 344–45.  While a period of unpaid leave might not always be a reasonable accommodation, such leave may be reasonable where the disability that interferes with an employee's capacity to complete assigned tasks is temporary and there is reason to believe that a leave of absence will provide a period during which the employee will be able to recover and return to work. *See Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 185–86 (2d Cir. 2006); *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1135–36 (9th Cir. 2001); *Cehrs v. Ne. Ohio Alzheimer's Rsch. Ctr.*, 155 F.3d 775, 783 (6th Cir. 1998); *Baucom v. Potter*, 225 F. Supp. 2d 585, 592 (D. Md. 2002) ("[A] leave

9

of absence to obtain medical treatment for alcoholism can be a reasonable accommodation if it is likely that, following treatment, the plaintiff would be able to safely return to his duties"). Such was the case here. During the leave-of-absence accommodation provided by UPS, Hannah received treatment, and, when he felt ready, he returned to full-time employment as a UPS package delivery driver. That Hannah would have preferred to be accommodated in some other way does not support a claim of discrimination under the ADA.

At bottom, we conclude that the district court did not err in concluding that, as a matter of law, Hannah failed to demonstrate that he requested a reasonable accommodation that would allow him to perform the essential functions of his job, as is required to establish his ADA claim.

III

Hannah maintains that in any event, material factual disputes precluded granting summary judgment to UPS and that the district court erred in overlooking or misstating them. He contends that there were factual disputes as to whether he would have "been able to complete his assigned route with one of his requested vehicles" and whether his requested accommodation "would have actually caused a violation of the [collective bargaining agreement]." He has acknowledged, however, that "*if* his requested truck could not hold all the packages for his route, *then* that would violate the [collective bargaining agreement]." (Emphasis in original). Thus, the dispute actually reduces to whether the

requested van could handle all the packages for delivery on his route. And on this issue, the record reveals no triable factual dispute.

First, it was undisputed that UPS selected a 600-cubic-foot truck for Hannah's route because it considered such a truck to be necessary for the number of packages to be delivered on the route. As the UPS representative explained, "[I]n order to let Mr. Hannah [drive] a smaller vehicle, he would have had to have taken the work off of that [vehicle] . . . and put it on another driver or drivers in that particular loop as we would call it." The representative also explained, "[I]f you were to put Mr. Hannah in a smaller vehicle and keep him on the same route, he would have to do multiple trips to and from the facility to continue to get his packages." He explained that those considerations led UPS to decide "that it [was] not a reasonable accommodation to get [Hannah] a smaller vehicle."

Hannah did not dispute those facts in his deposition. When asked whether the packages for his route would fit in a van, he could only say, "I believe so. It was never tried." He added that UPS simply "didn't try to see if a van would have worked on my route with all the packages." This does not contradict UPS's determination that a 600-cubic-foot truck was necessary to complete Hannah's route. It was more the expression of a hope or a request for an empirical study to determine whether he could do the route with a van of only 300 to 400 cubic feet. Because Hannah had the burden of proof, he needed to do more than express optimism that his intuition was correct to create a triable issue of fact.

Perhaps recognizing this, Hannah filed an affidavit during the litigation, which he now argues sufficed to create a dispute of fact. In that affidavit, he stated, despite what he

11

had said to the contrary in his deposition, "The Dodge Truck and UPS Van could hold all of my packages on my route because it was a country route. On some occasions a few stops might have received a lot of packages but then UPS could've put those on another driver and then gave me a few of that driver[']s stops that weren't bulky." This claim appears to be only a hopeful opinion, offered without any supporting factual basis. And more importantly, it is well established that "a party who has been examined at length on deposition [cannot] raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony," because to allow that "would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984) (quoting *Perma Rsch. & Dev. Co. v. Singer*, 410 F.2d 572, 578 (2d Cir. 1969)); *see also Stevenson v. City of Seat Pleasant*, 743 F.3d 411, 422 (4th Cir. 2014).

IV

Finally, Hannah contends that UPS did not, as required by the ADA, "engage in an interactive[] communication with [him] to determine if a reasonable accommodation existed" or that there was, at least, a factual dispute as to whether it did. *See* 29 C.F.R. § 1630.2(o)(3) (stating that in determining an appropriate accommodation, "it may be necessary for the [employer] to initiate an informal, interactive process with the [employee]").

Hannah agrees that he first made his request for a reasonable accommodation under the ADA on or about September 6, 2018. Before that date, he requested that UPS fit his

12

truck with a more padded and supportive seat so as to mitigate any undue jarring of his buttocks, and UPS accommodated that request. But he agrees that it was in September when he made his request for an ADA accommodation. The record shows that UPS acknowledged the request and asked that Hannah's medical provider complete a medical information form. Hannah's physician did complete the form, indicating that Hannah had sacroiliitis and was currently unable to perform all of the functions of his position based on Hannah's representation that he was "unable to tolerate riding on a seat." And his physician noted that his "only [job] restriction [was] driving [a] truck" and stated that Hannah could return to work but "should avoid prolonged sitting" until November 1, 2018.

Then, on October 19, 2018, Hannah met with several UPS officials, including its human resources manager, to discuss his request for an accommodation. During that meeting, Hannah completed an "Accommodation Checklist," on which he wrote that his medical restrictions prevented him from "prolong[ed] sitting in a UPS truck that[']s full size and 500 [cubic feet] and above." He also wrote that he was requesting a "delivery van or pickup truck that has softer suspension." As he later explained,

> The suspension [in a regular UPS truck] is harsh because we have to carry so many boxes. So they have to have stiff suspension to hold all those boxes. And that makes the harsh ride.

In the Accommodation Checklist, Hannah also requested alternatively that he be transferred to another position that did not involve driving, such as a "preload" role or "the night shift." Finally, he indicated that he would be willing to commute within 30 miles of the UPS center in Marietta, Ohio.

13

After meeting with Hannah and receiving Hannah's Accommodation Checklist, the human resources manager and other UPS employees "reviewed" and "discussed" Hannah's request for a smaller vehicle. After "discussing" and "evaluating" "how many packages [Hannah] was delivering on his route," they decided a smaller vehicle "would not be a reasonable accommodation." They also recognized that when drivers bid on different routes based on seniority, a "package car is typically assigned to [the] route" and "to switch a package car out on a route, it would have to be the same size of car due to . . . all things pertaining to that route." They also discussed how sharing Hannah's route with other drivers would not be possible under the collective bargaining agreement, and having Hannah drive the route in a smaller vehicle would involve multiple trips, which could not be done in a timely manner, would not be cost effective, and would implicate safety risks.

Thus, in a letter dated December 21, 2018, UPS informed Hannah that, "after carefully reviewing [his] situation," it was "not aware of any available position at UPS at [the] time for which [he was] qualified and capable of performing the essential job functions with or without reasonable accommodation." The letter indicated that UPS would "continue to look for such available position for up to six months" and that if his "condition or abilities change[d] in the future," or if he were to "become aware of an open position that [he] believe[d] [he was] capable of performing," he should contact UPS so that it could "re-evaluate the situation."

Hannah has not proffered what additional interaction he believes was required or what additional discussions he and UPS representatives could have had with each other

14

that could have made a difference.  We conclude that nothing more was required. Accordingly, we reject this argument.

*      *      *

At bottom, Hannah has not presented evidence from which a jury could find that UPS was required to allow him to drive his assigned delivery route using a smaller vehicle when (1) UPS, in considering his request, discussed and evaluated the number of packages he was delivering on his route and determined that they would not consistently fit on the type of vehicle Hannah had requested and that there was no reasonable way to work around that impediment, and (2) Hannah has failed to present any real evidence to rebut that determination.  Nor could a jury find that UPS was required to provide him with an alternative inside job when Hannah failed to show any opening for such a job.  Finally, Hannah has failed to show, as a matter of law, that his leave of absence was not a reasonable accommodation.  Accordingly, we affirm the district court's grant of summary judgment to UPS.

AFFIRMED

15