**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 25-2088

SHELLY G. HUDSON,

　　　　Plaintiff – Appellant,

　v.

CHARLESTON COUNTY SCHOOL DISTRICT; DANA RODGERS, in her individual capacity; JENNIFER COKER, in her individual capacity,

　　　　Defendants – Appellees.

Appeal from the United States District Court for the District of South Carolina, at Charleston.  David C. Norton, District Judge.  (2:22-cv-03423)

Submitted:  April 14, 2026　　　　　　　　　　　Decided:  June 9, 2026

Before DIAZ, Chief Judge, and HARRIS and BENJAMIN, Circuit Judges.

Affirmed by unpublished opinion.  Judge Harris wrote the opinion, in which Chief Judge Diaz and Judge Benjamin joined.

**ON BRIEF:**  Lawrence C. Kobrovsky, KOBROVSKY LAW OFFICE, LLC, Charleston, South Carolina, for Appellant.  Eugene H. Matthews, RICHARDSON PLOWDEN & ROBINSON, P.A., Columbia, South Carolina, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

PAMELA HARRIS, Circuit Judge:

Shelly Hudson taught for one year at a school for students with severe behavioral problems. After leaving that position, she sued the school district, the school's principal, and another district employee, claiming students at the school had racially and sexually harassed her and that the defendants were liable for the resulting hostile work environment. The district court found that Hudson had not provided the defendants with sufficient notice of the alleged harassment and granted summary judgment to the defendants. Finding no errors, we affirm.

In 2018, Hudson accepted a teaching position at the Daniel Jenkins Academy ("DJA"), an alternative school in the Charleston County School District.[1] DJA was designed to serve students with severe behavioral and mental health challenges, many of whom were assigned to attend the school in lieu of expulsion. At the time she accepted the position, Hudson had taught in similar alternative schools for more than a decade.

During the sole year she taught at DJA, Hudson faced consistent harassment from students, who sometimes mocked and threatened her and frequently used vulgar language towards her. As is relevant here, some of this harassment involved the use of racial and sex-based slurs, including the terms "cracker" and "bitch." In response, Hudson made at least 67 written disciplinary referrals to the school's administration. According to Hudson, the school responded with inadequate punishments that only encouraged the harassment to

---

[1] Except as otherwise noted, the facts presented here are not meaningfully disputed by the parties.

2

intensify.  On a particularly tough day late in the school year, Hudson suffered a panic attack while teaching.  She took leave, later resigned from her position, and has not worked since.

Hudson sued the school district, the DJA principal, and the principal's supervisor (whom Hudson described as the person in charge of student discipline for the school district).  As is relevant on appeal, she claimed the defendants subjected her to a racially and sexually hostile work environment, in violation of Title VII of the Civil Rights Act of 1964.[2]  Importantly, Hudson did not assert that any of the defendants themselves harassed her, but rather that they should be held liable for the harassment she faced from her students.

To meet her burden at the summary judgment stage, Hudson had to offer evidence sufficient to create a genuine dispute of fact that the conduct at issue was (1) unwelcome, (2) based on her race and/or sex, (3) "sufficiently severe or pervasive" to alter the conditions of her employment and create an abusive work environment, and (4) imputable to the defendants.  *Webster v. Chesterfield Cnty. Sch. Bd.*, 38 F.4th 404, 410 (4th Cir. 2022).  Satisfying the fourth element – that the harassment by her students could be imputed to the

---

[2] Hudson originally brought three additional claims:  (1) violations of her civil rights under 42 U.S.C. § 1981; (2) discrimination on the basis of race and gender, in violation of 42 U.S.C. § 1983; and (3) denial of full participation in a program receiving federal funding, in violation of Title VI of the Civil Rights Act of 1964.  But Hudson did not object to dismissal of her § 1981 and Title VI claims.  *See Hudson v. Charleston Cnty. Sch. Dist.*, 2025 WL 1922449, at *3 (D.S.C. July 14, 2025).  And she acknowledges that her § 1983 claim is analyzed under the same framework as her Title VII claim – meaning these two remaining claims rise and fall together.  *See* Appellant's Br. at 10–11; *Love-Lane v. Martin*, 355 F.3d 766, 786 (4th Cir. 2004).

defendants – required Hudson to show that the defendants knew or should have known that she was suffering racial or sexual harassment and failed to take prompt remedial action reasonably calculated to end it. *Id.* at 415.

In two thorough and well-reasoned opinions, the magistrate judge and district court concluded that the record evidence provided no basis for a finding that the defendants knew or should have known that Hudson felt she was being racially or sexually harassed, and on that ground, the district court granted summary judgment to the defendants. *See Hudson v. Charleston Cnty. Sch. Dist.* ("*Hudson I*"), 2024 WL 6471186, at *7–9 (D.S.C. July 22, 2024) (Magistrate Judge R&R); *Hudson v. Charleston Cnty. Sch. Dist.* ("*Hudson II*"), 2025 WL 1922449, at *6–8 (D.S.C. July 14, 2025) (District Court opinion). We review the district court's grant of summary judgment de novo. *Hall v. Sheppard Pratt Health Sys., Inc.*, 155 F.4th 747, 751 (4th Cir. 2025).

On appeal, Hudson raises two challenges to the district court's finding that the defendants lacked sufficient notice about the alleged racial and sexual harassment. We consider both below.

Hudson first points to the numerous written disciplinary referrals she filed over the course of the year, arguing these forms gave the defendants notice that she was being racially and sexually harassed by her students. The referrals certainly gave the defendants notice of "the students' poor behavior" towards Hudson and other adults, as the district court acknowledged. *See Hudson II*, 2025 WL 1922449, at *7. But the environment at DJA was not that of a typical school, at which such behavior would be rare. Instead, this kind of disciplinary problem was common at DJA – which, as noted above, specifically

4

serves students with severe disciplinary issues – and many DJA teachers on the receiving end of similar "disrespect and hostility" from students did not experience such behavior as harassment. *Hudson I*, 2024 WL 6471186, at \*8; *see Hudson II*, 2025 WL 1922449, at \*7. Moreover, Hudson did not use any of the avenues established by the school or the district to report that she faced harassment. *See Hudson II*, 2025 WL 1922449, at \*7; *Hudson I*, 2024 WL 6471186, at \*8.

In seeking to impute liability to her employer, Hudson bore a "significant responsibility" to give notice that she was experiencing conduct that amounted to harassment. *EEOC v. Xerxes Corp.*, 639 F.3d 658, 674 (4th Cir. 2011) (explaining that "an employer *cannot* be expected to correct harassment unless the employee makes a concerted effort" to provide such notice). And as we have explained, the unique context of a school environment that serves students with particular needs and challenges must be accounted for in our imputation analysis. *See Webster*, 38 F.4th at 415–17. Given the context here, we agree with the district court and magistrate judge that Hudson's disciplinary referrals would not have given the defendants notice that Hudson was complaining about *racial and sexual harassment*, rather than reporting expected – though surely difficult – disciplinary problems at DJA.

Second, Hudson contends that the magistrate judge and district court erred by declining to consider an affidavit she filed as an attachment to her opposition to summary judgment. In her affidavit, Hudson asserted for the first time that she regularly – "[a]t least three times a week" – "orally informed" an assistant principal that students were racially and sexually harassing her. J.A. 709. But the magistrate judge and district court both found

5

that this assertion contradicted Hudson's prior deposition testimony, and thus that it could not create a genuine factual dispute precluding summary judgment. *Hudson I*, 2024 WL 6471186, at *8 (citing *Hannah v. United Parcel Serv., Inc.*, 72 F.4th 630, 638 (4th Cir. 2023)); *Hudson II*, 2025 WL 1922449, at *4–5 (same).

Here too, we agree with the magistrate judge and district court. From the beginning of this case, Hudson admitted that she never filed a formal or informal harassment complaint and instead, as explained above, relied on her disciplinary referrals to establish notice to the defendants. At her deposition, she testified explicitly to that effect; when asked whether she "ever file[d] a complaint" alleging harassment, Hudson responded: "No. I notified the assistant principal, the principal, the district office [] through those [disciplinary] referrals of what was going on in there, because everybody had access" to the referrals. J.A. 602. Like the magistrate judge and district court, we read this testimony as Hudson acknowledging that she "did not inform school officials of the alleged unlawful harassment perpetrated by students . . . by any means other than through her student disciplinary referrals." *Hudson II*, 2025 WL 1922449, at *4; *see Hudson I*, 2024 WL 6471186, at *8.

That admission plainly contradicts Hudson's later-filed affidavit, where she claimed for the first time that she actually *had* told school administrators she was being racially and sexually harassed. The magistrate judge and district court thus correctly applied our rule that "a party who has been examined at length on deposition cannot raise an issue of fact

6

simply by submitting an affidavit contradicting h[er] own prior testimony." *Hannah*, 72 F.4th at 638 (brackets omitted).

Because we agree with the magistrate judge and district court's well-reasoned conclusion that Hudson did not provide the defendants with sufficient notice of racial or sexual harassment to impute liability to them, we affirm the grant of summary judgment to the defendants on Hudson's remaining claims.

*AFFIRMED*